PRAY, DRYER & COMPANY, Appellee, v. FARMERS' INCORPORATED CO-OPERATIVE CREAMERY, Appellant.

Sales: AUTHORITY OF AGENT: DECLARATIONS: INSTRUCTIONS: EVIDENCE.

*Appeal from Butler District Court.*—HON. G. W. RUDDICK, Judge.

FRIDAY, OCTOBER 13, 1893.

ACTION at law to recover damages for the defendant's failure to ship to the plaintiff four thousand, seven hundred and seventy-two and one half pounds of butter as per an alleged agreement. The defendant answered, denying generally. From a verdict and judgment for the plaintiff, the defendant appeals.—*Affirmed.*

*J. H. Scales,* for appellant.

*McIntyre, Hemenway & Grundy,* for appellee.

GIVEN, J.—The evidence shows without conflict that the plaintiff had, previous to the transaction in question, purchased butter from the defendant through its manager, Mr. A. B. Watson. That on September 3, 1891, Mr. Watson telephoned the plaintiff, asking if they wanted a

shipment of butter, to which they answered in effect that if they did they would wire up and buy it before Friday the next week. On September 3, Mr. Dryer, of the plaintiff firm, went to the defendant's creamery, and found Mr. James Santee, who was employed as a butter maker, in charge. Mr. Santee had the butter in question loaded to be taken to the railroad station for shipment. Santee and Dryer then and there agreed upon a sale of the butter to the plaintiff, and the price to be paid, whereupon the butter was unloaded, weighed, the marks removed, and the butter placed in the defendant's storage room. On September 4, the plaintiffs deposited in the post office at Shell Rock, Iowa, addressed to the defendant at Clutterville, Iowa, a draft for the agreed price of the butter. This draft should have been received by the defendant in the ordinary course of the mail on or before the following Saturday, but it was missent, so that the defendant did not receive it until the following Thursday, September 10. On September 10, the defendant shipped the butter to New York. The plaintiff claims that Mr. Santee agreed to receive the draft when deposited in the post office at Shell Rock as payment for the butter, and that defendant was to haul the butter to the railroad station, and ship it to the plaintiff, within a reasonable time, or when the defendant should need the storage room, or when the plaintiff should order the shipment. The defendant contends that the draft was to be sent so that the money could be realized thereon by Saturday following the sale, and that, not being so received, the plaintiff was not entitled to the butter. The defendant also contends that the plaintiff failed to show that Santee had authority to sell the butter, and especially upon the terms claimed by the plaintiff. The controlling questions are whether Mr. Santee did agree to receive the draft as payment when deposited in the mail at Shell Rock, and whether he had authority to so agree.

I.  The court instructed that the burden was on the plaintiff to prove by a preponderance of the evidence that Mr. Santee had authority from the defendant to make the sale of the butter, and, if they failed to so find, their verdict should be for the defendant. The appellant cites the rule that power to sell only confers authority to sell in the usual way, and complains of the refusal to give instructions asked to the effect that authority to Santee to sell the butter did not authorize him to agree to take in payment a draft deposited in the post office at Shell Rock. The instruction given must be read in the light of the issue and facts to which it related. The issue was as to Santee's authority to make the particular contract as claimed by the plaintiff, and the question of his authority to receive in payment a draft deposited in the post office at Shell Rock was included in the questions submitted in the instructions given.

II.  On the trial the plaintiff Dryer testified that the plaintiff Pray asked Mr. Santee why he did not ship the butter, and he said on account of the delay of the draft. The appellant moved to strike out this evidence as incompetent, immaterial, and the conclusion of an unauthorized person. The motion was overruled, and the appellant assigns the ruling as error, claiming that it is contrary to the rule "that the agent's declarations, made after the transaction is fully completed and ended, are not admis-

sible." The rule as claimed does not apply to this case. The transaction was not fully completed, and the evidence sought to be stricken out was the answer of the agent, who, according to the appellee's claim, had authority to and did make the sale and agreement to ship. It was in response to the appellee's inquiry why the shipment had not been made, and was a part of the incompleted transaction.

III. The appellant's further contentions are that the evidence fails to show an agreement to accept the draft deposited in the post office at Shell Rock, Iowa, in payment of the butter; that it fails to show that Mr. Santee had authority to make sales of butter for the appellant, and fails to show that he had authority to agree to take a draft deposited in the post office at Shell Rock, Iowa, in payment for butter. As already stated, there is no question but that Mr. Santee did make an agreement with the plaintiff for the sale of the butter, but there is a question as to his authority to make the agreement claimed, and whether he did make it as claimed with respect to receiving the draft. There is evidence tending to show that Mr. Santee had authority to and did agree as claimed by the plaintiff, and evidence to the contrary. This conflict was fairly submitted to the jury, and, their finding having support in the evidence, we cannot disturb their verdict.

Our conclusion is that the judgment of the district court should be AFFIRMED.