## SCHMUCKER v. HIGGINS-ROBERTS GRAIN CO.

No. 829.  Opinion Filed May 9, 1911.

**EVIDENCE—Parol—Party in Interest—Contract by Agent—Action by Principal.** A principal may maintain an action on a written contract made by an agent in his own name, and by parol evidence the agent may prove that his principal was the real party in interest, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol.

(Syllabus by the Court.)

*Error from District Court, Kiowa County; James R. Tolbert, Judge.*

Action by the Higgins-Roberts Grain Company against W. B. Schmucker. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. A. Morris*, for plaintiff in error.
*Nestor Rummons*, for defendant in error.

TURNER, C. J. This is a suit in damages brought by Higgins-Roberts Grain Co., a corporation, defendant in error, against W. B. Schmucker, plaintiff in error, on October 5, 1906, in the district court of Kiowa county, for failure to accept the wheat agreed to be delivered by contract in writing, which reads:

Vol. 28—46

"J. M. Higgins.                                          W. N. Julian.
Higgins & Julian,
Dealers in General Merchandise.
Robinson Cipher.
Grain and Cotton.
Lone Wolf, Okla., 6-23-1906.
"I have this day bought of J. M. Higgins Ten Thousand Bushels No. 2 hard wheat to be shipped in Sept., 1906, at 70 cents Basis Lone Wolf, O. T. No. 3 wheat to apply on contract at market price diferce.          W. B. SCHMUCKER,
J. M. HIGGINS."

The petition alleges that said contract was entered into by said Higgins, its president, for and on behalf of said plaintiff corporation. For answer defendant admitted the execution of the contract, but, among other things, pleaded that it was made solely with Higgins; that plaintiff was unknown in the transaction and was not the real party in interest. After reply filed there was trial to a jury and judgment for plaintiff for $730.83, and defendant brings the case here.

At the close of plaintiff's testimony defendant demurred to the evidence, which was overruled, and this is assigned for error. In support of his demurrer defendant contends that the evidence is insufficient to show that plaintiff is the real party in interest. On this point Higgins testified, in substance, that on the day of the contract he was a member of the firm of Higgins & Julian, partners, dealers in general merchandise at Lone Wolf, Oklahoma; that he was president of the plaintiff corporation and Julian a stockholder therein; that said contract was made and executed by Higgins and Schmucker, the parties thereto, in the store of Higgins & Julian at that place and written on one of their letter heads; that, while in fact Higgins was then buying grain as agent for Higgins-Roberts Grain Company, his principal was undisclosed; that immediately after its execution and delivery said contract was forwarded to said grain company at Oklahoma City, and thereafter Higgins bought the necessary wheat to perform the contract; that in August or September after said contract was made Higgins withdrew from the grain company, after which he

had no interest therein except as a stockholder. Standing, as it does, undisputed, this evidence was not only competent, but ample to prove the agency in question. *Oldrich et al. v. Ford*, 21 Md. 489; *Pray, Dryer & Co. v. Farmers, &c.*, 89 Iowa, 741; *Beatman Lumber Co. v. Kittrell*, 80 Ark. 228; *The Nowell Stock Co., &c., v. The Atlas, &c., Co.*, 103 Md. 209; *Ruiz v. Norton*, 4 Cal. 355.

In *Rankin v. Blaine County Bank*, 20 Okla. 68, 93 Pac. 536, this court, in the syllabus, said:

"A principal may maintain an action on a written contract made by his agent in his own name, and evidence may properly be admitted to show that the principal was the real party in interest, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol evidence."

We are therefore of opinion that the court did not err in overruling the demurrer to the evidence raising this point. In proof of a tender and refusal to accept the wheat, it was also shown by uncontradicted testimony, over defendant's objection, that by the custom and usage among grain dealers "to be shipped in September," used in the contract, gave the seller the option to deliver the wheat at any time during the month of September, and that it was the duty of the buyer, upon a request for shipping instructions during the month, to immediately furnish them; that on September 3, 1906, the grain company mailed defendant this letter:

"W. B. Schmucker,
        "Falls City, Neb.
"Dear Sir:
        "We will ask you kindly to furnish us shipping instructions, at once, for 10,000 bushels of wheat sold you for Sept. shipment by our Mr. J. M. Higgins.        Very respectfully,
                        "Higgins-Roberts Grain Co."
—To which he replied:

                                "Miami, I. T.
"Higgins & Roberts,                "Sept. 5, 1906.
        "Oklahoma City, Okla.
        "Yours of the 3rd has just been forwarded to me here.  I expect to store wheat right at Lone Wolf as I don't care to sell

it this fall. Will be at Lone Wolf next week and will instruct you from there. Respectfully yours,

"W. B. SCHMUCKER"

—that on receipt of this letter the grain company answered immediately requesting defendant to stop in Oklahoma City and arrange for the delivery of the wheat; that to this defendant did not reply, but in a short time thereafter Mr. Roberts, the secretary of the grain company, met defendant in Lone Wolf and tried but failed to make arrangements for the delivery of the wheat to him; that after his return to Oklahoma City, on September 15, Mr. Roberts pressed defendant for immediate instructions and suggested that the time for delivery was running short; that on September 17, 1906, defendant wrote to Mr. Roberts suggesting that the deal be declared off and stating that he would come to Oklahoma and see him; that, failing to come, the grain company sent several letters and telegrams notifying defendant that it would hold him to his contract and demanding shipping instructions. These were never given nor a tender of the wheat received, whereupon, after being compelled to sell elsewhere at a loss, the grain company brought this suit.

It is unnecessary to cite authority in support of the admissibility of these letters and telegrams for the purpose for which they were offered. They abundantly proved a breach of the contract and were undisputed. We have carefully examined the testimony and find there was no error in its admission or in the exclusion of testimony offered by defendant.

The court did not err in refusing to give the following instruction:

"If you find from the evidence that the defendant notified plaintiff on the 17th day of September, 1906, of a revocation of the contract sued on, release thereof and refusal on his part to accept the wheat contracted for, then you are instructed that plaintiff had no right thereafter to incur additional cost or loss in the fulfillment of said contract by additional purchases of wheat on said contract, and if plaintiff did so, it was at his cost and loss for which defendant is in nowise chargeable"

—for the reason that there is no evidence upon which to base it, the sole alleged evidence upon which it was predicated being a letter from defendant to plaintiff dated September 17, 1906, in reply to one from plaintiff of the 15th urging shipping orders, which were persistently refused. In effect, it read that "taking everything into consideration I think it best for both parties to call the deal off," and, after some expression of evasion as to why he had not accepted the wheat, closed thus:

"I shall be very fair with Mr. Higgins and won't try to hold him to his contract. I expect to go to Northwest Arkansas this afternoon and will be gone several days—may be able to arrange to come back by Oklahoma City. Will be back to Miami by Sat. or Sunday."

Far from tending to prove a "revocation" of the contract or a "release" thereof and a "refusal on his part to accept the wheat," it amounted to nothing more than an evasion and a "bluff," and was insufficient to base said instruction upon.

The error assigned that:

"Said court erred in submitting to the jury the following instructions, as 'Instructions Requested by Plaintiff,' and over the objection of plaintiff in error, without writing at the close of each instruction 'given and excepted to'; and without signing each instruction requested by defendant in error, as judge, to wit: 'Instruction Requested by Plaintiff.'" (Setting out instructions Nos. 1 to 5)

—and that:

"The court erred in submitting to the jury all of the instructions given in the case—nine in number—including the foregoing instructions, 1 and 5, without signing any of them, and in submitting all of said nine instructions to the jury as 'Instructions Requested by Plaintiff,' without writing at the close of any said instructions, as required by statutes 'given and excepted to,' such omission naturally misleading the jury to infer and conclude that defendant took no exceptions to any of the instructions asked by plaintiff and submitted by the court, all to the prejudice of the rights of plaintiff in error"

—for the reason that said objections are frivolous, will not be further considered.

There is nothing in the remaining assignments of error.

Affirmed.

All the Justices concur.