## HAMPTON v. CULBERSON.

No. 904.   Opinion Filed July 11, 1911.

Rehearing Denied September 26, 1911.

(118 Pac. 134.)

APPEAL AND ERROR—Review—Sufficiency of Evidence.   Where the evidence reasonably tends to support the verdict, the judgment of the trial court will be affirmed.

(Syllabus by the Court.)

*Error from District Court, Grady County; Frank M. Bailey, Judge.*

Action by A. F. Ross, administrator of the estate of W. W. Hampton, against J. C. Hampton. On the death of Ross, James A. Culberson was substituted as administrator. Judgment for plaintiff, and defendant brings error. Affirmed.

*Bond & Melton,* for plaintiff in error.

*R. D. Welborne* and *Utterback & Hayes,* for defendant in error.

TURNER, C. J. On October 6, 1905, A. Frank Ross, as special administrator of W. W. Hampton, sued J. C. Hampton, plaintiff in error, in the United States court for the Indian Territory, southern district, at Chickasha. His complaint substantially states that prior to April 16, 1903, defendant was indebted to said Hampton, $1,508.95, evidenced by certain promissory notes then in possession of defendant; that on said day said J. C. Hampton gave to said Hampton his check for said amount, whereupon said notes were delivered to defendant, after which payment of said check was refused by the bank upon which it was drawn because of lack of funds there on deposit to the credit of the maker. He prayed judgment for said amount.

For answer defendant denied the indebtedness and alleged: That on May 10, 1901, he and J. L. Hampton entered into a contract with said W. W. Hampton for the purchase from him of certain lands and improvements therein described, and 150 head of horses estimated at $10 per head, for which they agreed to pay him $3,000, evidenced by their three certain promissory notes payable to said Hampton. That said J. L. Hampton abandoned his part of said contract, and defendant has assumed it all. That only 106 head of said horses could be found, the purchase price of which, owing to their condition, by subsequent agreement, was reduced to $5 per head. That he was entitled to a credit on 106 horses at $5 per head, or $530, and on 44 horses at $10 a head, or $440; in all for horses, $970. That he was entitled to a further credit of $671.05 evidenced by account against W. W. Hampton thereto attached, leaving a balance due him on said notes of $1,248.95 only. That in 1903 upon final settlement $100 was agreed on as the balance due said Hampton, whereupon he delivered to defendant said notes which he has since retained. He admits that he drew a check in favor of said Hampton for $1,508.95, the exact amount sued for, but alleged that by error

it was for more than was due him, and upon which, when discovered, payment was stopped and a check for $1,348.95 given in lieu thereof, which had been paid and that by reason of all which he says he is not indebted as charged and asks to be discharged with his costs.

Pending su t A. Frank Ross died, and James A. Culberson, administrator of the estate, was substituted as plaintiff, and the action ordered to proceed in his name. After reply there was trial to a jury and judgment for plaintiff, and defendant brings the case here.

In proof of payment, or accord and satisfaction, defendant relied on the contract, which reads:

"Contract is hereby made and entered into by and between W. W. Hampton, party of the first part, and J. C. Hampton and J. L. Hampton, parties of the second part. It is agreed that party of the first part sell and convey unto parties of the second part a certain stock ranch, herein described situated on the south side of Blue creek Central Dist. I. T., consisting of about 225 acres of cultivated land six sets of houses and about two section of land fenced with wire and posts used as grazing lands further agrees to sell and convey 150 or more ponies on the south side of Blue creek if only like a few to make up the 150, parties of second part agree to pay to party of first part $3000.00 in three annual payments first one thousand dollars October 15th, 1901, second Oct. 15th, 1902, third Oct. 15th, 1903, all notes bearing 10 per cent. interest from date. May 10th, 1901. W. W. Hampton. J. C. Hampton. J. L. Hampton."
—And a letter to W. W. Hampton, dated Caddo, I. T., March 21, 1903, which reads:

"Bro. Will:  *  *  *  Inclose I send you statement of your account also a check the horses amounted 106 head and as they did not come up to what they were to be I think you should be satisfied with $5.00 per head which would make them $530.00, and the place at $1,500.00 equal to $2,030.00, this check for $1,358.95 would make the amount due you without interest, this i leave with you, if you think I should pay it, I will do it. I haven't made anything but the ponies and they are sorry property, the most of them dead. This check you are to hold until you hear from me or you get notice from the bank, then if you

think I am right you can send my notes.  *  *  *  J. C. Hampton."

He contended on the trial that the check mentioned in the letter was received in full settlement as therein proposed, and that thereupon the notes were turned over to him, and that his check for $1,508.95 found among the effects of deceased and introduced in evidence, the exact amount of which was sued for as the balance due on said notes, had theretofore been given as a result of a miscalculation of the amount due, which, when discovered, payment thereon was stopped, and thereafter said check for $1,358.95 was sent in full payment of principal, followed in September, 1903, with $100 as interest in full payment of the debt.

On the other hand, it was contended that W. W. Hampton never agreed to accept said check of $1,358.95 in full payment as proposed in said letter, but demanded the full amount due him on the notes. As evidence of which, among other things, they contend, which is true, that said check bears date March 21, 1903, while said check for $1,508.95 was dated April 20, 1903, showing that the amount thereon was thereafter exacted. This is verified not only by the books of the bank upon which it was drawn, but by the postmark on the envelope containing the check made by the transmitting and receiving offices. This discrepancy in the dates was attempted to be explained by defendant without success, as is evidenced by the verdict of the jury which sustained the latter contention and rendered a verdict accordingly.

There being evidence reasonably tending to support the verdict, we will not disturb it. For the reason that the court, in effect, charged as requested in the fifth assignment of error, and substantially stated the law throughout his charge, no error appearing in the record, the judgment is affirmed.

. DUNN and KANE, JJ., concur; HAYES, J., absent and not participating; WILLIAMS, J., disqualified.