## SHENNERS v. ADAMS.

No. 4413.    Opinion Filed May 11, 1915.

(148 Pac. 1023.)

1. APPEAL AND ERROR—Trial—General Finding—Construction and Effect. Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding and judgment, and is conclusive upon this court upon the doubtful and disputed questions of fact.

2. PRINCIPAL AND AGENT—Contract of Agent—Right to Enforce. When an agreement is executed by an agent in his own name, the principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transaction, or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf. Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal, even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his own behalf.

3. CONTRACTS—Essence of Contract—Time. Under section 968,

Rev. Laws 1910 Ann., before time shall be the essence of a contract, it must be expressly stipulated therein, and no particular form of expression is necessary; but it must appear from the plainly expressed provisions contained in such contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be the essence thereof.

4. **APPEAL AND ERROR—Excessive Judgment—Remand with Directions.** Where a party recovers judgment in the trial court for a certain sum, and there is evidence to support a judgment for a lesser sum, but not for the full amount of the recovery, and the law clearly authorizes judgment for the lesser amount, it is not only within the power, but it is the duty, of this court to remand the case to the lower court, directing it to render judgment in favor of the party entitled thereto for the amount to which he is entitled.

(Syllabus by Robberts, C.)

*Error from District Court, Murray County;*

*R. McMillan, Judge.*

Action by J. Q. Adams against W. D. Shenners, revived after his death in the name of Margaret Shenners, administratrix of his estate. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

*Ira M. Roberts* and *E. W. Fagan,* for plaintiff in error.

*Geo. M. Nicholson, Emanuel & Broadbent* and *J. Q. Adams,* for defendant in error.

ROBBERTS, C. This action was commenced in the district court of Murray county by the defendant in error, plaintiff below, against W. H. Shenners, on a contract, to recover the sum of $5,265, wieh interest, for services performed in the purchase and sale of certain real estate in said county known as Sulphur Heights.

Several motions and demurrers were filed to the original and first amended petitions, but they were superseded, and their effect

as pleadings destroyed by the filing of the second amended petition, which is complete in itself and does not refer to or adopt either of the others as a part of it, and this case will be determined upon the second amended petition, and exceptions to the rulings of the court, and the original disregard.     Enc. Pl. & Pr. vol. 1; 624, *Moore v. Wade,* 8 Kan. 380.     The original defendant, W. D. Shenner, is now deceased, and the case revived in the name of Margaret Shenners, as administratrix of his estate.

For his cause of action the defendant in error alleges in his second amended petition that on or about the 25th day of February, 1908, he made and entered into a written contract with W. H. Shenners, "by and through his agent, F. L. Shenners, and that thereafter, on the 7th day of March, 1908, he entered into an additional and supplemental contract with W. H. Shenners in person, and by the terms of said contract it was agreed between the parties that defendant in error should and would 'look after the legal matters pertaining to the purchase of certain tracts of land known as Sulphur Heights,' and assist in the sale of said property, draw deeds and contracts, and have the same properly executed, and for said mentioned services, and other work, he was to receive $5 a lot, when the lots in said addition were sold, and providing, further, that if said Sulphur Heights was sold as a whole, on or before October 15, 1908, he was to receive the sum of $1,500 in full for his services"; that W. H. Shenners bought said property on the 9th day of January, 1908, and said property was not sold on or before October 15, 1908, but was sold by him on the 15th day of May, 1909; that plaintiff performed all the services required of him under said contract; that said property contained 1,035 lots, which, at $5 a lot, would amount to the sum of $5,265, for which he prayed judgment, with interest.

A motion to strike out that part of the petition referring to and containing the supplemental contract was overruled by the

court, as was also a general demurrer to the petition. We find no error in the rulings of the court in those particulars.

The answer being a general denial, unverified, the execution of the contracts by F. L. Shenners and W. H. Shenners, and the agency of F. L. Shenners, are all admitted in the pleadings, and will require no further proof.

The case was tried to the court without a jury, and judgment rendered for plaintiff for full amount claimed in the petition.

The plaintiff, in support of his cause of action, produced D. H. Colburt, the father of the minor who was the owner of the land, who testified as follows:

"Frank Shenners employed Mr. Adams, the plaintiff, to attend to the deal for him. Frank Shenners told me Adams was his lawyer for that purpose. There was another contract between Mr. Adams and W. H. Shenners, and Shenners told me several times that he had employed Mr. Adams as his lawyer; that he was looking after his business here; and that he had gotten him to straighten out the deal. The restrictions had not been removed at that time. They were removed after Shenners employed Adams. The lots were not sold until after the restrictions were removed. Mr. Adams was attending to having the restrictions removed. Adams was Shenners' attorney, and looked after his interests in this matter."

Mrs. Colburt, the mother of the minor who owned the land, testified substantially the same as the father.

Bruce Rawlins, another witness, testified that W. H. Shenners told him that Adams was his attorney.

The plaintiff testified:

"This deal started in December, 1907, and from that time on, clear on until after the deal was made, the sale was made.

the transfer made, I was acting for W. H. Shenners in looking after the matter in any shape or form it would come up. At that time, or at the time, · rather, when we commenced, the restrictions were not removed on this land, and it was a part of my work in case the restrictions were not removed in a short time to take the proper steps to have the restrictions removed. * * * I did everything I was to do. I did this as I stated. That led up to the time of the sale. I explained to these parties that there had been a bill introduced removing these transactions, and we decided to wait then awhile to see if the bill went into effect, and shortly after that I was informed that the bill had passed, and the removal of the restrictions would go into effect on the 27th day of July, and I advised Mr. Colburt—Mr. Shenners was the one I was looking after his interests—that it would be well to wait until the time for the restrictions, to go into effect. Mr. Shenners said he thought that restrictions, the law removing the restrictions, to go into effect. Mr. Shenners said he thought that would be a good idea, and we waited. Mr. Shenners still wanted me then to keep cases on the matter and watch everything and just be quiet until the restrictions went into effect, and he said that he would like then for me to take the papers and the contract to Dixie Colburt, and get Dixie to sign the contract with him. I told him that they wouldn't be binding. He said, 'Well, have it done anyway,' and I did, at his request. That contract was signed on the 28th day of July, the next day after the bill removing the restrictions went into effect. I sent Mr. Shenners a copy of the contract signed by Dixie Colburt and Mrs. Colburt."

The testimony shows that the plaintiff performed other services for the defendant. An attempt was made by counsel for defendant to minimize the services performed by plaintiff and the value thereof, but these matters were passed upon by the trial court, and, whatever view counsel for defendant or this court might take as to the amount of the services or the value thereof, we are concluded by the judgment of the trial court, and have no disposition to interfere with its findings in that particular.

The rule is well settled that, if there is any evidence to sup-

port the findings and judgment of the lower court, it will not be disturbed in this court. _Hampton v. Culbertson,_ 29 Okla. 468, 118 Pac. 134.

"Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact." _McCann v. McCann,_ 24 Okla. 264, 103 Pac. 694; _Kaufman v. Boismier,_ 25 Okla. 252, 105 Pac. 326.

From the foregoing it will be seen that the sufficiency of the evidence to sustain the judgment cannot be gone into by this court, and therefore the first contention of plaintiff in error, that "there was no evidence upon which the court could calculate or base a verdict for the amount of the judgment or any specified amount," involving assignments Nos. 1, 2, 3, 9, and 11, cannot be sustained. The evidence shows a contract for services. There is some evidence that some service was rendered. The trial court so found, and that settles the question.

The second contention, that "the court erred in permitting the plaintiff to materially change his cause of action and the theory of his recovery from that contemplated in the original contract and sued upon," involving assignments Nos. 4, 5, 7, 8, and 11, is without merit, for the reason that the amendment did not change the cause of action. The cause of action from first to last was to recover for services performed. The final judgment was for the identical services mentioned in the original petition.

The fact that the original contract was in the name of F. L. Shenners is not material. The petition alleges that F. L. Shenners was the agent and partner of W. H. Shenners, and that, in fact, it was the contract of W. H. Shenners; the answer being unverified. These allegations are admitted.

"When the agreement is executed by an agent in his own name, * * * the principal may maintain a suit and enforce

the contract, and it is immaterial whether the principal was actually known during the transaction, or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf. Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal, even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf." *Milchell v. Knudston Land Co.*, 19 N. D. 736, 124 N. W. 946; Pomeroy on Contracts (2d Ed.) 89; *Baird Investment Co. v. Harris*, 209 Fed. 291, 126 C. C. A. 217.

The third contention, that "plaintiff rendered no legal service," has already been disposed of. The evidence may be conflicting on that point, but the trial court found for the defendant in error.

Likewise there is nothing in the record to support the charge that the contract sued upon was against public policy. The land was sold by order of and under direction of the county court, to the highest bidder. All the proceedings were subject to public inspection, and approved by the court. The ruling of the court in permitting plaintiff to withdraw his petition and in granting a continuance was all in the discretion of the court, and there was no prejudicial error therein.

This brings us to the most difficult question in the case; that is, the amount of recovery.

It will be noticed from the allegations of the petition that two contracts are involved—the first made by F. L. Shenners in his own name, but as agent of W. H. Shenners; and the second or supplemental by W. H. Shenners in person. They involve the same transactions, and the only difference between them is the first provides that, "if the property should be disposed of in one or more sales, the plaintiff was to receive one-third of the proceeds"; while the latter provides that, "if the property is sold 'as

a whole,' on or before the 15th day of October, 1908, he is to receive $1,500 in full payment for all his services."

By a fair construction of these contracts, taken together, the last provision, or that contained in the last contract, in regard to compensation, supersedes the former. As the evidence shows, and it is conceded, that the property was not sold 'as a whole,' on or before the 15th day of Octobtr, 1908, the question arises: On what theory, and thereby, what should be the amount of the plaintiff's recovery?

As stated before, both contracts cover and include the same transactions. They are between the same parties; the first in the name of the agent, but for, and on behalf of, the principal. In the first it is provided that:

"In case said contract of sale should be consigned to any body or company, or be disposed of in one or more sales, * * * the said J. Q. Adams shall receive one-third of the proceeds of said sale or transaction."

The last contract states:

"In case Sulphur Heights is sold as a whole on or before October 15, 1908, J. Q. Adams is to receive fifteen hundred dollars in full payment for any and all services rendered Sulphur Heights for the party of the second party."

The contracts are somewhat ambiguous in that particular, but it seems to us that the principal matter in the minds of the parties sought to be settled was that, in case the tract was sold as a whole, or in a body, the agent was to receive a much smaller compensation for his services, and that would not be unnatural, but in perfect accord and keeping with reason and the usual way of transacting business. If the property had been sold one lot at a time, there being more than 1,000 lots, the work would have been many times greater than by one sale and one set of

transfer papers. The proposition needs no further argument in that behalf.

Again, the terms of the contract do not expressly or in·substance provide that time shall be the essence of the contract. Section 968, Rev. Stat. 1910 Ann. Under the above section, before time shall be the essence of a contract, it must be expressly stipulated therein. We do not base this case solely on the iron-clad proposition expressed by the language of the statute, and are fully aware that no particular form of expression is necessary; but it must appear from the plainly expressed provisions of the contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be the essence of the contract. *Standard Lumber Co. v. Miller & Vidor Lbr. Co.,* 21 Okla. 617, 96 Pac. 761; *Snyder v. Stribling,* 18 Okla. 205, 89 Pac. 233. Of course, as a rule, each case must stand upon the language of the particular contract involved, and that rule is applied herein. We hold that, under the language of the contracts herein, the amount of the recovery should be limited to $1.500, with interest.

The rule that, where a lawyer and layman enter into a written agreement which is ambiguous, the language of the contract should be interpreted most strongly against the lawyer, is also a wholesome doctrine to apply in this case.

After a careful consideration of the entire record and the law governing the case, we are of opinion that the case should be affirmed, but modified to the extent of remanding it to the district court, with directions to enter judgment in favor of the plaintiff below against the defendant below for the sum of $1,500, with interest at 6 per cent. per annum from the date of the sale of the land, viz., the 15th day of May, 1909, and we so recommend.

By the Court: It is so ordered.