**CHOATE et al. v. STANDER et al.**

No. 7296—Opinion Filed Oct. 24, 1916.

(160 Pac. 737.)

1. **Principal and Agent—Rights of Principal —Suit in Name of Principal.**

A principal may maintain in his own name an action upon a written contract made in the name of the agent.

2. **Bills and Notes—Actions — Evidence— Answer.**

In an action by S. upon an unindorsed note made payable to C., where the answer of the defendants alleges that the note was executed in consideration of a contract for the conveyance of lands by S. to defendants, and that the payee, C., acted as the agent of S. in the transaction, such answer admits the ownership of the note in S., and S. may maintain the action in his own name, and no proof that he is the owner and holder of the note is required, even though such ownership be denied in the answer.

3. **Principal and Agent—Actions—Evidence.**

Evidence examined, and held not to establish an agency to substitute other notes for notes given by the defendants.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by Maggie P. Stander and T. A. Stander against John W. Choate, Ralph W. Day, and E. V. Weaver. Judgment for plaintiffs, and John W. Choate and Ralph W. Day bring error. Affirmed.

B. O. Young, for plaintiffs in error.

Jno. H. Wright and Clarence J. Blinn, for defendants in error.

Opinion by RUMMONS, C. This action was commenced in the district court of Oklahoma county, by the defendants in error, hereinafter styled plaintiffs, against John W. Choate, Ralph W. Day, plaintiffs in error, and E. V. Weaver, hereinafter styled defendants, to recover the sum of $335.14 upon five promissory notes executed by the defendants Choate and Day and to foreclose a lien upon certain real estate in Oklahoma county for the amount due upon said notes.

The petition of the plaintiffs alleges the execution and delivery of said five promissory notes to Edward Croak, and alleges that at the same time as part of the same transaction, plaintiffs being the owners of the real estate described in said petition, executed and delivered to the defendants Choate and Day a written contract, agreeing to convey said real estate to said defendants; that the purchase price of said real estate, except for the sum of $27.50 paid in cash, was evidenced by said promissory notes, and alleged that before the maturity of said notes the payee, Edward Croak, sold and assigned said notes by delivery to plaintiffs, who became and are now owners and holders of each of said notes. Plaintiffs pray judgment upon said notes for the sum of $335.14, and for foreclosure of the lien created by said contract on the real estate described in said petition.

The defendant E. V. Weaver made default, and the defendants John W. Choate and Ralph W. Day filed their answer, which consists of a general denial of all the allegations in the petition, except such as are specifically admitted. Defendants admit the execution and delivery of said notes, and allege that plaintiffs were wife and husband, and the owners of the real estate described in the petition, and on the date of the execution of said notes plaintiffs agreed to sell said real estate to the defendants for the sum of $275, of which sum $27.50 was paid in cash, and the balance of the purchase price was evidenced by the several notes herein sued upon, aggregating $247.50, and said defendants agreed to purchase said lots on the terms above set forth. That said agreement

of sale was reduced to writing, and is the contract alleged and set up in plaintiffs' petition. Defendants further allege that at the same time stated by the contract, there entered into between plaintiffs and defendants, the plaintiff and defendants entered into numerous other similar contracts for the purchase of other lots in said addition, and that all of the lots so purchased by the defendants were afterwards by them resold to other purchasers; these purchasers paying to said defendants their equity in cash, and giving notes to said defendants in sums equal to the amounts covered by the notes given by said defendants to the plaintiffs, the purchasers from defendants receiving assignments of defendants' contracts of purchase from plaintiffs. That in every case of a resale by defendants, except as to the lots in controversy herein, plaintiffs accepted from defendants the notes of such purchasers in exchange for the original notes given by defendants to plaintiffs. Defendants further say that in all of these transactions said Edward Croak acted as the agent and attorney in fact for said plaintiffs, who were the real parties in interest at all times; that the plaintiffs were not purchasers for value of said notes before maturity. Defendants further allege that they resold said lots and received from the purchaser his notes in the sum of $247.50, and defendants allege that they took said notes to the office of said Edward Croak to exchange them for the notes herein sued upon; that the said Edward Croak was out of his office at the time, but that defendants found there one Trentman, the agent of Croak and the agent of plaintiffs; that Trentman then and there accepted said notes in exchange for the notes herein sued upon, and the notes of said purchaser were then and there properly indorsed and delivered to said Trentman, who stated that Edward Croak or plaintiffs had the notes herein sued upon, and that he would get them and deliver them to defendants at a later date. Defendants further allege that they subsequently saw said Edward Croak, and fully advised him of the transaction herein described, and that the said Edward Croak said that it was all right, but that he could not return their notes to them then, as they were not in the office; that he would get them and deliver them to said defendants later. Defendants further allege that although often requested said Edward Croak and plaintiffs have neglected and refused to return the notes herein sued on to defendants or either of them, and defendants further allege that by reason of the facts above set forth the notes sued on by plaintiffs have been paid in full and the contract extinguish-

ed and terminated by agreement of all the parties thereto.

To this answer the plaintiffs filed a verified reply, denying generally the allegations in said answer not admitted in plaintiff's petition, and denying specifically that Edward Croak was the agent and attorney in fact of the plaintiffs in the manner and for the purposes set forth in the answer, and denying specifically the agency of Trentman.

The cause was tried to a jury, and at the opening of the trial the trial court held that the burden of proof was upon defendants; thereupon defendants demurred to the evidence of plaintiffs, which demurrer was by the court overruled and exceptions allowed. At the conclusion of the testimony defendants moved the court to direct the jury to return a verdict for the defendants for the reason that the plaintiffs had failed to show that they were the owners and holders of the notes sued upon. Thereupon the plaintiffs moved the court to discharge the jury and enter judgment for the plaintiffs, for the reason that the evidence introduced by the defendants did not constitute a defense to the cause of action of plaintiffs. The court overruled the motion of the defendants, and allowed an exception, and sustained the motion of plaintiffs, to which the defendants excepted, and entered judgment for the plaintiffs in the sum of $333.30, and for foreclosure of the lien upon the real estate described in the petition. The defendants having unsuccessfully moved for a new trial, bring this proceeding in error to reverse the judgment of the court below.

The defendants assign five errors of the court, which are argued under two heads. The assignments of error are as follows: (1) That the court erred in overruling motion of plaintiffs in error for a new trial. (2) That the court erred in overruling the demurrer of plaintiffs in error to the evidence of defendants in error. (3) That the court erred in refusing and ruling out competent and legal evidence on the part of plaintiffs in error. (4) That the court erred in overruling the motion of plaintiffs in error for the court to direct the jury to return a verdict for plaintiffs in error. (5) That the court erred in sustaining the motion of defendants in error to discharge the jury and enter judgment for defendant in error.

The second, third, and fifth assignments of error are argued together by defendants, and it is contended that said assignments of error are well taken, for the reason that the notes sued upon were made payable to Edward Croak, and that no indorsement of said

notes by said Edward Croak appeared thereon, and no evidence was offered by plaintiffs that title thereto had been transferred to them from said Edward Croak. Defendants cite numerous authorities upon two propositions: First, that the allegation in an action upon a promissory note by one other than the payee that the plaintiff is the owner and holder thereof may be put in issue by an answer not verified; second, that in an action upon a promissory note by one other than the payee thereof, where nothing appears by way of indorsement or otherwise to indicate the ownership of plaintiff therein, and the allegation in the petition of ownership in the plaintiff is put in issue by an unverified answer, the burden is upon the plaintiff to establish ownership, and unless evidence be offered to establish that fact a demurrer to the evidence should be sustained.

We agree with the soundness of the propositions contended for by defendants, but are unable to see their applicability to the instant case, for the reason that the contract for the sale of the real estate involved herein for which the notes in controversy here were given was executed by Edward Croak as attorney in fact for the plaintiffs, and defendants in their answer affirmatively allege that the plaintiffs agreed to sell said real estate to the defendants, and that the notes in suit were executed and delivered in payment of the balance of the purchase price of said real estate. They further affirmatively allege that Edward Croak, in all of the transactions, acted as the agent and attorney in fact of plaintiffs.

It has been settled by this court that:

"A principal may maintain an action on a written contract made by an agent in his own name, and by parol evidence the agent may prove that his principal was the real party in interest." Schmucker v. Higgins-Roberts Grain Co., 28 Okla. 721, 116 Pac. 184.

And that:

"When the agreement is executed by an agent in his own name, * * * the principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transaction, or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf." Shenners v. Adams, 46 Okla. 368, 148 Pac. 1023.

The defendants having by their answer alleged and admitted that the notes were given as part of the purchase price of lands sold them by the plaintiffs, and that Edward Croak, the payee, was the agent of plaintiffs in the transaction, the plaintiffs were entitled to sue upon these notes in their own

names, and were relieved by the allegations and admissions in the answer from offering any proof that they were the real parties in interest and the owners and holders of the notes. We therefore conclude that there is no merit in the second, third, and fifth assignments of error.

Under the second head defendants argue the fourth assignment: That the court erred in refusing and ruling out competent and legal evidence on the part of plaintiffs in error. Defendants were permitted to offer evidence showing that they sold the real estate here in controversy and took notes from the purchasers thereof to the amount of their notes; that they delivered the same to one Trentman, who was claimed to be associated with Croak and the agent of plaintiffs, but that Trentman did not deliver up their notes, because he was not in possession of them. Defendants offered evidence seeking to prove that they entered into an agreement with Croak and Trentman by which they were to substitute the notes of their purchasers for their own. Numerous objections were made to this line of examination, which were sustained by the court, upon the ground that the agency of Croak and Trentman to make this substitution for plaintiffs was not shown. The defendants complain of this action of the court, and insist that they were entitled to show these agreements. We do not deem it necessary to set out the questions to which objections were sustained in this opinion.

The defendants offered the plaintiff T. A. Stander as a witness in their behalf, and in connection with his examination introduced the contract between plaintiffs and Croak, under which the sale to defendants was made. The plaintiff Stander, upon cross examination, denied that he ever had given any authority to Croak to make the substitution of notes upon which defendants rely as a defense.

The contract offered in evidence is quite voluminous, but we think it necessary to a proper consideration of this assignment of error that the material parts thereof be set out in full. They are as follows:

"I. The parties of the first part hereby give and grant unto the party of the second part, his heirs and assigns, the sole and exclusive right to negotiate sales of all lots and blocks contained in said Stander's first addition to Oklahoma City, Oklahoma, as well as any other additions that may be platted and dedicated in pursuance of this contract out of and contained in said quarter section.

"II. The parties of the first part hereby

agree to and with the party of the second part that they will file for record a duly authenticated plat of Stander's first addition to Oklahoma City, Oklahoma; the party of the second part to bear all the expenses incident to the survey, mapping and record of said plat.

"III. The parties of the first part agree to and with the party of the second part to accept the sum of eighty-seven 50-100 dollars ($87.50) for each of said lots and the price as hereby fixed as to sum to be paid to the parties of the first part, provided that in any event the total sum to be paid to the parties of the first part shall not exceed the sum of seven hundred dollars ($700.00) per acre, and said sum of seven hundred dollars ($700.00) per acre is to be the full payment to the parties of the first part for said property, but it is expressly agreed that the party of the second part may sell each and all of said lots for a sum in excess of eighty-seven 50-100 dollars ($87.50) per lot and that the excess of said eighty-seven 50-100 ($87.50) or seven hundred dollars ($700.00) per acre shall be the property of the party of the second part and shall be accepted by him as full compensation for all that he may do in effecting the sale of said lots and otherwise promoting the sale of Stander's first addition to Oklahoma City, Oklahoma, and any other additions that may be platted and dedicated in pursuance of this contract out of or contained in said quarter section.

"IV. The parties of the first part hereby agree to and with the party of the second part, his heirs and assigns, that in advancing and promoting the sale of said property, the party of the second part shall have the right to do all such grading, laying of sidewalks, tree planting and cultivating as are calculated to add to the value and beauty of said Stander's first addition to Oklahoma City, Oklahoma, and any subsequent additions that may be platted and dedicated in pursuance of this contract.

"V. The parties of the first part hereby require, and it is made an essential condition of this contract, that the party of the second part shall pay to the party of the first part not less than twenty-five thousand dollars ($25,000.00) in cash and notes secured by first lien on said property, within six months from the date hereof, and provided, further, that if said payment of twenty-five thousand dollars ($25,000.00) in cash and notes is not made within the time provided in this paragraph, then this contract, at the option of the first parties, is to become null and void.

"VI. The parties of the first part hereby agree to and with the party of the second part that the lots in said addition may be sold on a contract executed by the party of the second part as agent of the parties of the first part, to purchasers, and the parties of the first part hereby constitute, appoint, and empower the party of the second part

their attorney in fact for that purpose, as though the parties of the first part had signed said contract in person, hereby ratifying and confirming any and all such contracts made by the party of the second part in accordance with the conditions of this contract. This provision is understood by the parties of this contract to be made for the purpose of making Edward Croak the attorney in fact for Maggie P. Stander and T. A. Stander, wife and husband, for the purpose as expressed in this paragraph. Said contract above referred to, to require a payment in cash of not less than 20 per cent. of the value of each lot at the time of sale, providing that out of said cash payments, the first parties are to receive one-half, or 50 per cent. of the cash so received, and the balance of the purchase price due to the first parties on said each lot so sold to be evidenced by notes as due under each of said contracts of sale, said notes not to run longer than six, twelve, and eighteen months, to bear interest at not less than 8 per cent. per annum and to be equal in amount, or as nearly so as it is practicable to make them.

"VII. The parties of the first part further agree to and with the party of the second part that upon the request of the party of the second part so to do, they will execute and deliver warranty deeds to purchasers of said lots when said purchasers shall have paid the full amount for said lot or lots."

This contract is the only evidence offered by the defendants as to the authority of Edward Croak to make the agreement to substitute the notes of their purchasers for those of defendants, and there was no evidence as to the authority of Trentman to act in the matter. It will be seen from an examination of this contract that the only authority delegated to Edward Croak by the plaintiffs was to sell the lots embraced in their addition, and to deliver to the plaintiffs one half of the cash by him received and notes secured by liens upon the real estate sold for the balance unpaid up to the amount of the price agreed upon by plaintiffs and Croak for said addition. This contract nowhere gives to Croak authority to do anything further with the notes received for deferred payments, except to deliver them to the plaintiffs. Croak had no further control over the notes executed for the purchase price of this realty, and it does not even appear that he had authority to collect the same.

One seeking to charge another with the acts of a purported agent has the burden of establishing such agency. Gast v. Barnes, 44 Okla. 107, 143 Pac. 856.

The defendants having wholly failed to show the agency of Croak to make the substitution upon which they rely, we conclude that the court committed no error in sus

taining objections of plaintiffs to evidence tending to show agreements and conversations between defendants and Croak to carry into effect the substitution of the notes.

Finding no reversible error in the record, the judgment of the court below should be affirmed.

By the Court: It is so ordered.