CHAPMAN et al. v. JAVA PAC. LINE et al.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1917. Rehearing Denied June 6, 1917.)

No. 2911.

1. EVIDENCE ⊝418—VARYING WRITING—CONTRACTS OF AGENT.
    The rule that extrinsic evidence to show a contract in the name of an agent to be that of his principal is admissible only when the principal was undisclosed does not obtain in the federal courts, and the evidence is admissible whether the contract purports to be that of the agent or is made in the name of the agent as principal, and whether or not the principal was disclosed.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1722, 1906–1911.]

2. SHIPPING ⊝108—CONTRACTS FOR TRANSPORTATION—REQUISITES—MEETING OF MINDS.
    Where plaintiffs, after considerable correspondence with defendant concerning the reservation of space in defendants' steamers for the shipment of bar iron and steel in which they purported to be acting as agents for the P. Company, wrote a letter to defendants without mentioning the P. Company by name, but reciting the various reservations made and asking that they be confirmed, which was done, if they intended to reserve space in their individual capacity and for speculation by selling it to other shippers, the minds of the contracting parties never met upon such understanding, in the absence of a disclosure of their intention to defendants.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 226, 404, 406–410.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by J. W. Chapman and another, copartners as Chapman & Thompson, against the Java Pacific Line and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

The plaintiffs in error were the plaintiffs in the court below. The parties herein will be designated plaintiffs and defendants. The action was brought to recover damages for breach of a shipping contract. The complaint alleged:

That prior to January 27, 1916, the plaintiffs had requested the defendants to reserve for them space in the steamers of defendants sailing from San Francisco to Hong Kong and Manila, during the months of February, March, April, May, and June, 1916, and on that day they wrote to J. D. Spreckels & Bros. Company, agent of the Java Pacific Line, the following letter: "Gentlemen: Beg to acknowledge receipt of your letter of January 22d, confirming bookings for shipment from San Francisco during February, March and April and reservations for May and June. We have shown opposite the tonnage booked for each month the rates which are to apply and we would appreciate it if you would confirm the same. February shipment, 1110 weight tons. rate $8.00 per ton of 2000# for bar iron under 30 feet in length, plate iron and structural steel, no piece to exceed 4000# in weight, $10.00 per ton of 2000# to Hong Kong and Manila. March shipment, 1000 weight tons, rate $10.00 per ton of 2000# for bar iron under 30 feet in length, plate iron and structural steel, no piece to exceed 4000# in weight, $12.00 per ton of 2000# to Hong Kong and Manila. April shipment, 1000 weight tons, rate $25.00 per ton of 2000# for bar iron under 30 feet in length, plate iron and structural steel, no piece to exceed 4000# in weight, $30.00 per ton of 2000# to Hong Kong and Manila. May shipment, 1000 weight tons, rate to Hong Kong and Manila to be quoted about February 20th. June shipment, 1000 weight tons, rate to Hong Kong and Manila, to be quoted about March 20th. The above rates apply from ship's tackle, San Francisco, to ship's tackle, destination. We would ask that you confirm above bookings, reservations and rates so as to complete our records." That on February 12th the plaintiffs received the following answer: "Gentlemen: Referring to your letter of January 27th, detailing the space which you have booked or reserved with us for the next few months. We confirm what you have written, except that in the month of March we have on our books reserved for you 300 tons weight for iron bars, plate iron, and structural steel. We have noted against this item on our record, space to be increased if it is possible for us to accommodate any more of your freight on that steamer. The freight rates mentioned in your letter are also hereby confirmed."

That the plaintiffs thereupon notified the defendants that the reservation of 300 tons for the month of March was satisfactory, and requested the defendants to use their best efforts to increase the space for the month of March. That during the month of February, 1916, plaintiffs caused to be shipped on the defendants' steamer, in pursuance of the contract, certain bar iron, for which freight was paid $8 per ton. That on February 25 the plaintiffs wrote the defendants the following letter: "Gentlemen: Referring to our letter of January 27th and yours of February 12th confirming booking for shipments from San Francisco during the months of February, March and April. In accordance with the writer's arrangement with Mr. Edwards that we could book about 300 tons of measurement on this booking deducting it from the April booking, we have booked firm account of Studebaker Bros. Co. of California, 250 measurement tons of 40 cubic feet for shipment from San Francisco to Manila on S. S. Karimoen scheduled to sail April 22, 1916. Therefore, that we may obtain for you as per your request, letter from the shipper that is to forward the shipment, will you please send me by bearer, letter addressed to Studebaker Bros. Co. of California reading as follows: 'This confirms your contract for space engagement made with Messrs. Chapman & Thompson for account the S. S. Karimoen scheduled to sail about April 22, 1916.' We wish to furnish you this letter this afternoon together with letters covering other space."

That on February 26, 1916, the defendants repudiated the contract, and notified the plaintiffs that they would not further perform the same, and the plaintiffs alleged that they were damaged in the sum of $37,000, in this, that prior to the repudiation of the contract the plaintiffs had offers from various persons to purchase from them the right to ship bar iron by the defendant's steamer sailing from San Francisco in March of that year at the rate of $50 per ton, and other space at $40 per ton, by which they would have made a profit of $37,000 on their contract had the same not been repudiated.

The answer alleged that on December 2, 1915, the plaintiffs, representing to

defendants that they were acting for and on behalf of the Pacific Coast Steel Company, booked with the defendants for account of that company space for 360 tons of steel to be shipped on the defendant's steamer scheduled to sail on February 19, 1916, and at the same time secured an option for said Pacific Coast Steel Company to ship an aggregate of 750 tons, and thereafter, on December 3d, confirmed said option; that on January 28, 1916, the booking of said 1,110 tons of bar iron and steel to be shipped on the steamer sailing February 19, 1916, was duly confirmed by the Pacific Coast Steel Company, and the same was so shipped; that on December 24, 1915, the plaintiffs, representing themselves to be agents for the Pacific Coast Steel Company, booked with the defendants for account of that company 300 tons of bar steel, which steel was shipped in the month of March, 1916; that similar contracts were made on behalf of the steel company for the shipment of iron and steel upon steamers of the defendants scheduled to sail on April 22 and May 22, 1916, through the agency of the plaintiffs; that the letter of January 27, 1916, set up in the complaint, was part and parcel of said prior transactions and correspondence, and of said contracts, and that the Pacific Coast Steel Company thereafter disaffirmed the contract of December 30, 1915, and the contract for shipment in April, 1916, and the contract for shipment on May 22, 1916, and informed the defendants that the plaintiffs were not authorized to enter into said contracts for or on account of the Pacific Coast Steel Company, and that the Pacific Coast Steel Company declined to ship cargo thereunder; and that on February 29, 1916, the defendants wrote to the plaintiffs, denying that the contract was made with the plaintiffs or for their account.

A demurrer to the affirmative matter alleged in the answer was overruled, and thereafter the cause came on for trial before a jury, and at the conclusion of the evidence the court directed the jury to return a verdict for the defendants.

Alfred J. Harwood and Eustace Cullinan, both of San Francisco, Cal., for plaintiffs in error.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is the contention of the plaintiffs that it was error to overrule the demurrer, and error to admit in evidence the correspondence other than the letter of January 27, 1916, and the reply thereto, that those two letters comprised the whole of the contract, and that the legal effect thereof could not be varied by proof of other correspondence or conversations between the plaintiffs and the defendants and the officers of the Pacific Coast Steel Company; and the plaintiffs invoke the rule that all letters and conversations leading up to a written contract are merged therein, and that the terms of the contract, where they are clear and unambiguous, cannot be varied by proof of prior communications. The plaintiffs were the traffic managers of the Pacific Coast Steel Company. It is not denied that in that capacity they acted in all the negotiations with the defendants prior to the letter of January 27, 1916. This is not disproved by the fact that on January 22, 1916, in a letter introduced by the plaintiffs, the defendants wrote to the plaintiffs stating that the space is reserved "in your name." The fact that the space was reserved in the name of the plaintiffs is not inconsistent with the evidence that they were acting as the traffic agents of the Steel Company. In Ford v. Williams, 21 How. 287, 16 L. Ed. 36, it was said:

"Notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction."

But the plaintiffs contend that such evidence is admissible only where the principal was undisclosed, and not in cases where, as here, the principal was known. It is true that some of the state courts have so held, as in Ferguson v. McBean, 91 Cal. 63, 27 Pac. 518, 14 L. R. A. 65, a case relied upon by the plaintiffs. This illogical rule, however, never obtained in the federal courts, and the state courts have generally yielded to the more just and equitable doctrine that the principal may be disclosed whether the contract purports to be that of the agent, or is made in the name of the agent as principal, and that it is immaterial whether or not the principal was undisclosed. In Byington v. Simpson, 134 Mass. 169, 45 Am. Rep. 314, Judge Holmes, answering the argument that inasmuch as the plaintiffs knew of the existence of a principal before the contract was made, and were contented to accept a written agreement which, on its face bound the agent, they must be taken to have dealt with, and to have given credit to the agent alone, said:

"We are of opinion that the plaintiffs' knowledge does not make their case any weaker than it would have been without it."

And in Curran v. Holland, 141 Cal. 437, 75 Pac. 46, the Supreme Court of California in effect overruled Ferguson v. McBean, citing Reinhard on Agency, § 223, as follows:

"While extrinsic evidence, except in the instances heretofore pointed out, will not generally be received to vary or contradict the contents of a written instrument, such evidence is always admissible to charge with liability an undisclosed principal, or one who, though disclosed is not named in the instrument."

In Exchange Bank v. Hubbard, 62 Fed. 112, 10 C. C. A. 295, the court said:

"In order to charge the real principal, it is always competent, in whatever form a parol or written contract is executed by an agent, to ascertain by evidence dehors the instrument who is the principal, whether it purports to be the contract of an agent, or is made in the name of the agent as principal; and the real principal may be held, although the other party knew that the person who executed as principal was in fact the agent of another."

Among the cases so holding are Nicoll v. Burke, 78 N. Y. 583; Edwards v. Gildemeister, 61 Kan. 141, 59 Pac. 259; Kelly v. Thuey, 143 Mo. 422, 45 S. W. 300; Stowell v. Eldred, 39 Wis. 626; Barbre v. Goodale, 28 Or. 465, 38 Pac. 67, 43 Pac. 378; Mitchell v. Land Co., 19 N. D. 736, 124 N. W. 946; Shenners v. Adams, 46 Okl. 368, 148 Pac. 1023; Flower v. Commercial Trust Co., 223 Fed. 318, 138 C. C. A. 580.

[2] The evidence to which the plaintiffs excepted shows that the letters on which the plaintiffs based their cause of action were two of a series of letters that passed between the plaintiffs and the defendants, and between the steel company and the defendants, beginning with December 2, 1915, all relating to shipments by the Pacific Coast Steel

Company of their bar iron and steel on the defendants' vessels, and all naming the steel company as the party in interest in the reservations for space made and sought to be made. The earlier letters refer to shipments to be made in February, 1916. On December 24th four letters were written by the plaintiffs to the defendants. They all contained the heading "Subject: Booking and Request for Option for Space Account Pacific Coast Steel Company." The first letter was for space for a shipment by the steel company to be made on March 23d. The second and third were for shipments to be made on April 22d. The fourth was for a shipment to be made on May 22d. On December 30, 1915, the plaintiffs wrote the defendants a letter with the heading "Subject: April Space on Account Pacific Coast Steel Company," and confirming a conversation whereby space had been booked for shipment on April 22d, and on the same date they wrote a letter with the heading "Subject: May Option on Account Pacific Coast Steel Company," confirming an agreement to ship 1,000 tons of bar iron on May 22d. The letter of January 10, 1916, is in line with the previous letters, and confirms the plaintiffs' conversation with defendants concerning a shipment of 1,000 tons of bar steel on May 22d. On January 28, 1916, the Pacific Coast Steel Company wrote to the defendants confirming the booking of 1,110 tons of bar iron and steel for shipment on a vessel to sail February 19th, "in accordance with the booking made by Chapman & Thompson."

The letter of January 27, 1916, sent by the plaintiffs to the defendants, and which the plaintiffs say is a part of their contract, contains no mention of the Pacific Coast Steel Company by name. It presents, however, a résumé of previous arrangements, as evidenced by the preceding correspondence, and aside from its contents it is identified with the prior correspondence by the allegation of the complaint that prior to January 27, 1916, the plaintiffs had requested the defendants to reserve for them space in the steamers of defendants sailing from San Francisco to Hong Kong and Manila during the months of February, March, April, May, and June, 1916. It first speaks of the February shipment of 1,110 tons, evidently referring to the 360 tons and 750 tons mentioned in the letters from December 2 to December 10, 1915. It next speaks of the March shipment of 1,000 tons, referring thereby to the booking made by letter of December 24th, reserving space for 300 tons and asking for space up to 1,000 tons. Then follows the reference to "April shipment 1,000 tons." This is explained by the previous bookings made by two letters of December 24th for 750 and 250 tons, confirmed by the letter of December 30th. It is unnecessary to consider the further contents of the letter of January 27th, for the plaintiffs admit that their cause of action is limited to the alleged breaches of contract as to the March and April shipments. In brief, the whole correspondence shows that from first to last the plaintiffs were acting as the traffic managers of the Pacific Coast Steel Company, and that they had no interest in the contracts. In one of their letters of December 24, 1915, they claimed that preference should be given the Steel Company over Eastern manufacturers, for the reason that:

"Our steel is manufactured at San Francisco, and our only opportunity of shipping it is via the lines sailing from this port."

The plaintiffs base their claim for damages, not on the refusal of the defendants to ship goods for the Pacific Coast Steel Company, or goods of their own. They admit that they had no goods to ship. They claim damages only for the loss of profits which they might have made by selling space to other shippers at greatly advanced freight rates. If by their letter of January 27th they intended to reserve space, not for their principal, but in their individual capacity, and for speculation on their own account, they never disclosed that fact to the defendants, and the minds of the contracting parties never met upon such an understanding. We are of the opinion that the court below committed no error in overruling the demurrer to the answer, in admitting evidence, or in directing the jury to return a verdict for the defendants.

The judgment is affirmed.