### EXCHANGE BANK v. HUBBARD et al.

#### (Circuit Court of Appeals, Second Circuit. May 29, 1894.)

#### No. 112.

1. CONFLICT OF LAWS—PROMISE TO ACCEPT DRAFT.
    Where a promise is made in one state to accept a draft payable in another state, the law of the state where the draft is made determines the validity of the contract; and it is immaterial that, by the statutes of the state where the draft is payable, a promise to accept must be in writing, to be deemed an actual acceptance, and, if not in writing, can be enforced only by the person who draws or negotiates the bill.

2. NEGOTIABLE INSTRUMENTS—ORAL PROMISE TO ACCEPT DRAFT—ACTION FOR BREACH.
    An action for breach of a promise to accept drafts, to be made and negotiated to obtain money for a specified purpose, may be maintained by one who has taken such drafts for money furnished by him for said purpose on the faith of the promise.

3. PRINCIPAL AND AGENT—MONEY LOANED ON AGENT'S DRAFTS ON PRINCIPAL.
    Defendants requested H. & Co. to purchase for them certain cotton, and to borrow the money to pay therefor on defendants' credit, promising to remit currency or to accept drafts for the amount loaned, at the lender's option. H. & Co. obtained the money from a bank on the faith of this promise, giving their drafts on defendants therefor, and therewith purchased the cotton, which defendants received, but refused to accept the drafts. *Held*, that defendants were liable to the bank as for a loan made to them, and for their benefit, through their agents.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by the Exchange Bank against Samuel T. Hubbard and others, doing business under the firm name of Hubbard, Price & Co., for the amount of certain bills of exchange. A demurrer to the complaint was overruled (58 Fed. 530), but at the trial the judge directed the jury to find a verdict for defendants, and judgment for defendants was entered thereon. Plaintiff brought error.

John R. Abney (William B. McCam, C. E. Spencer, and J. R. Abney, of counsel), for plaintiff in error.

Sullivan & Cromwell (William J. Curtis and Edward B. Hill, of counsel), for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in the court below brings this writ of error to review a judgment for the defendants

entered upon the verdict of a jury. The principal question presented by the assignments of error is whether the trial judge erred in instructing the jury to render the verdict.

It appeared upon the trial that the plaintiff, a bank doing business at Yorkville, S. C., cashed certain drafts drawn by the firm of Hope & Co., of that place, upon the defendants, the firm of Hubbard, Price & Co., cotton merchants doing business at New York City. The evidence authorized the jury to find that the drafts were cashed under the following circumstances: On the 5th day of October, 1891, Price, one of the defendants, applied at Yorkville, S. C., to Hope, of Hope & Co., to purchase cotton for the defendants. Hope informed Price that a lot of 300 bales was to be sold on the following Wednesday. Price requested Hope to ascertain if the money to pay for the cotton could be raised from the bank at Yorkville, and authorized him to state to the bank that the defendants would remit the currency immediately upon receiving the bills of lading for the cotton, or would honor drafts promptly, whichever the bank preferred, and stated that if the money could be raised in this way he would decide the next day whether to buy the cotton, and would telegraph Hope from Atlanta. Thereupon, Hope consulted with the president of the plaintiff, and told him what Price had said, and the plaintiff promised to furnish the money upon the production of a satisfactory authorization from the defendants. The next day, Hope & Co. received a telegram from Atlanta, from Price, making an offer for the cotton; fixing the price, subject to a variation of one-eighth cent per pound, at the discretion of Hope & Co., and directing the cotton to be shipped by bills of lading to a firm at Norfolk, Va., of which Price was a member. The telegram contained also this sentence: "Drafts on New York, or currency shipment from there, as you prefer." Hope thereupon exhibited this telegram to the president of the plaintiff, purchased the cotton, and shipped it, conformably to the instructions, drew drafts for the amount upon the defendants, payable at New York upon presentment, and procured the plaintiff to cash the drafts. One of the drafts was honored and paid by the defendants. Acceptance of the other drafts was refused.

Upon the evidence it was a question of fact, for the jury, whether Price represented the defendants in the transactions mentioned, or the Norfolk firm, of which he was a member, and also whether Hope & Co., in buying the cotton, acted merely as agents. Hope testified that he told Price that Hope & Co. had no money, and could not buy the cotton, but that he would be glad to represent him (meaning Price's firm), and do what he could to secure the cotton for them. The telegram from Price to Hope, giving the latter discretion as to the price, indicates that Price regarded Hope & Co. as agents, and not as purchasers on their own account.

The trial judge ruled that the cause was controlled by the statutes of New York relating to bills of exchange, and that the plaintiff was not entitled to recover, pursuant to the statutory provisions, either as upon a written acceptance by the defendants of the drafts, or as upon a breach of a promise to accept. These stat-

utes provide that no person within this state shall be charged as an acceptor upon a bill of exchange unless his acceptance shall be in writing, signed by himself or his lawful agent; that an unconditional promise in writing to accept a bill before it is drawn shall be deemed an actual acceptance in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration; and that these provisions shall not be construed to impair the right of any person to whom a promise to accept a bill may have been made, and who, on the faith of such promise, shall have drawn or negotiated the bill, to recover damages of the party making such promise on his refusal to accept such bill. 3 Rev. St. N. Y. (7th Ed.) pp. 2242, 2243.

We think the ruling of the trial judge was erroneous. The contract having been made in South Carolina, the statutes of New York do not furnish the rule by which to determine its validity, notwithstanding the drafts were to be accepted and made payable there. Matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made. Those connected with its performance are regulated by the law prevailing at the place of performance. Accordingly, where a promise is made in one state to accept a draft which is to be payable in another state, and by the statutes of the latter the promise would be invalid, the law of the state where the promise is made determines the validity of the contract. This was expressly decided in Scudder v. Bank, 91 U. S. 406. Authorities to the like effect are Tilden v. Blair, 21 Wall. 241; Russell v. Wiggin, 2 Story, 213;[1] and Brown v. Finance Co., 31 Fed. 517. If the contract was valid at common law, there being no statutes in South Carolina affecting it, it was valid everywhere; and it is quite immaterial that by the statutes of New York a collateral promise of acceptance is required to be in writing, or that a promise to accept a bill which is not in writing can only be enforced by the person who draws or who negotiates the bill, as was held in Bank v. Gibson, 5 Duer, 574.

Notwithstanding the ruling of the trial judge proceeded upon an erroneous view of the law, the exception taken by the plaintiff is not avaliable if, upon any view of the facts, the plaintiff was not entitled to recover. We are therefore to inquire whether the evidence authorized the jury to find a state of facts giving a good cause of action to the plaintiff.

It is to be observed that the action was not brought to charge the defendants as acceptors of the drafts, nor even to recover for a breach of their promise to accept the drafts, but that the complaint, conformably to the provisions of the Code of Civil Procedure, sets out all the facts attending the advance of money by the plaintiff which were proved upon the trial, and is sufficient to authorize a recovery upon any legal theory warranted by the evidence.

It is well settled that a promise to accept an existing bill, is, in legal effect, an acceptance, and suffices to maintain an action upon

[1] Fed. Cas. No. 12,165.

the bill in favor of any person who takes it upon the faith of the promise, whether the promise be in writing or by parol. This was held in Scudder v. Bank, supra, where the suit was brought upon an oral promise to accept a draft, and it is sufficient to refer to the authorities there cited. Such, also, is the rule in the courts of South Carolina. Strohecker v. Cohen, 1 Speer, 349. Nevertheless, the defendants did not become liable as acceptors of the drafts, according to the judgments of the federal courts, because the promise was not one to accept any particular bill or bills, but was one to accept generally any drafts which might be drawn on them by Hope & Co. for the purchase of the cotton. Coolidge v. Payson, 2 Wheat. 66; Schimmelpenich v. Bayard, 1 Pet. 264; Boyce v. Edwards, 4 Pet. 111. In Boyce v. Edwards the court used the following language:

"The distinction between an action on a bill, as an accepted bill, and one founded on a breach of promise to accept, seems not to have been adverted to, but the evidence necessary to support the one or the other is materially different. To maintain the former, as has been already shown, the promise must be applied to the particular bill alleged in the declaration to have been accepted. In the latter the evidence may be of a more general character, and the authority to draw may be collected from circumstances, and extended to all bills coming fairly within the scope of the promise."

The court observed, however, that as respected the rights and remedies of the immediate parties to the promise to accept, and of all others who might take bills upon the credit of such promise, they were as secure and attainable in an action on the breach of a promise to accept as they could be in an action on the bill itself.

Where the action is brought for the breach of a promise to accept a bill, while there can be no doubt of the right of the person to whom the promise is made to maintain an action, and attain practically the same remedy which he would have against an actual or virtual acceptor, it is not so well settled that an action can be maintained upon such a promise by a third person, who has taken the bill upon the faith of the promise. The objection is a want of privity between him and the promisors. This objection was considered in Cassel v. Dows, 1 Blatchf. 335, Fed. Cas. No. 2,502, by Mr. Justice Nelson, and in Russell v. Wiggin, supra, by Mr. Justice Story, and in each of these cases was held not to be tenable. In the present case it may be doubtful whether the telegram sent by Price to Hope & Co., standing alone, was a sufficient promise to accept the drafts; but it is to be read in the light of the surrounding circumstances, proof of which was admissible to aid in ascertaining the purpose of the paper, and in applying and interpreting its language. Barney v. Worthington, 37 N. Y. 115; Hutchins v. Hebbard, 34 N. Y. 24. In view of its language, thus interpreted, and especially in view of what had taken place between Price and Hope on the previous day, the proof of a promise to accept such drafts as might be negotiated in order to obtain the money to purchase the cotton was entirely satisfactory. There seems to be no reason why the plaintiff should not be entitled to recover as for the breach of a promise to accept the drafts.

We are also of the opinion that the facts would have justified

the jury in finding that, throughout the entire transaction of purchasing the cotton and raising the purchase money, Hope & Co. were acting as the agents of the defendants, and within the scope of the general authority in that behalf which the defendants had delegated to them.    In this view of the case, as there is no pretense that the plaintiff gave credit to the agents personally, the defendants are liable as principals for a loan made to them, and for their benefit, through their agents.    The facts set forth in the complaint and shown upon the trial establish a cause of action for money had and received of the plaintiff to the use of the defendants.    Upon a quite similar state of facts, it was said in Bank v. Ely, 17 Wend. 512, that the drawees would be liable as drawers of the bills, and that, if no drafts had been given, they would have been liable upon the plainest law applicable to the relation of principal and agent.    In order to charge the real principal, it is always competent, in whatever form a parol or written contract is executed by an agent, to ascertain by evidence dehors the instrument who is the principal, whether it purports to be the contract of an agent, or is made in the name of the agent as principal; and the real principal may be held, although the other party knew that the person who executed as principal was in fact the agent of another.    Ford v. Williams, 21 How. 287; Coleman v. Bank, 53 N. Y. 393; Briggs v. Partridge, 64 N. Y. 357; Byington v. Simpson, 134 Mass. 169; Steamship Co. v. Harbison, 21 Blatchf. 336, 16 Fed. 688.    It is therefore quite immaterial that the money was advanced upon drafts drawn by Hope & Co.

The case is, in substance, one in which the jury might have found that the defendants requested Hope & Co. to act as agents for them in buying a certain lot of cotton, and borrowing the money, upon their credit, with which to pay for it, upon the assurance that they would remit currency as soon as they received bills of lading for the cotton, or accept sight drafts drawn upon them for the amount loaned, at the option of the lender.    Hope & Co. borrowed the money.    The defendants received the cotton, repaid some of the money borrowed of the plaintiff by their agents, and have refused to pay the balance.    There seems to be no reason why, upon these facts, they should escape liability.

The judgment is reversed, and the cause remanded to the circuit court, with instructions to grant a new trial.