WILLIAM H. FLINN, Appellee, v. WESTERN MUTUAL LIFE ASSOCIATION, Appellant.

APPEAL AND ERROR: Record—Bill of Exceptions—Effect of
1  Stipulation. Where the only bill of exceptions in the record contains the statement that the matter was submitted upon a stipulation of facts, and upon facts alleged in the petition, the same was binding upon the parties; and, if erroneous, correction thereof should · have' been secured in the lower court by proper application; and it cannot be urged in the appellate court that the matter was not submitted on the facts included in the petition.

PLEADING: Plea of Jurisdiction—Burden of Proof. On a special
2  appearance and plea to the jurisdiction of the court, the burden to sustain the plea is on the defendant.

INSURANCE: Fraternal Benefit Associations—Identity of Associa-
3  tion—Evidence. Where a fraternal insurance association, formed and organized under the laws of South Dakota, was consolidated with a company which was later formed and organized in the state of California, under the same name as the South Dakota association, and the secretary of the Dakota association announced that the officers, members, certificates, and contracts of the two associations were all the same, *held* that the two associations represented one and the same entity.

INSURANCE: Fraternal Benefit Associations—Compliance with Stat-
4  utory Requirements—Presumptions—Continuation of Policies and Collection of Premiums. A nonresident insurance association does not cease to do business in the state by withdrawing its agents and ceasing to obtain new policies, if, at the same time, its old policies continue in force, and the premiums there-

on are collected from the policy holders; and its duty is to continue to comply with the requirements of Section 1808, Code, 1897, that service of notice on it may be made on the state auditor (now insurance commissioner); and where a South Dakota association had complied with said section, and, after the statement of its secretary that the officers, members, certificates, and contracts of the South Dakota association remained the same as those of the California association of the same name, the California association continued to do the business of the South Dakota association, and collect premiums on its policies, the California association is presumed to have complied with the state statute, and is in the same position as it would have been if it had filed its written consent in compliance with said section.

INSURANCE:   Fraternal Benefit Assocations—Process upon Nonresident Association.   Under Section 1808, Code, 1897, service of process on a nonresident association is not confined to an acceptance of the same by the auditor of state, but service thereof can be made by the sheriff on the auditor.

INSURANCE:   Fraternal Benefit Associations—Statutory Requirements—Commissioner of Insurance.   By Section 1683-r3, Code Supp., 1913, the insurance department is separated from the office of the auditor of state, and placed in charge of the commissioner of insurance; and, under the provision that "all powers now vested in and the duties imposed upon the auditor of this state relating in any way to insurance matters, shall * * * be vested in and made incumbent upon the commissioner of insurance," the provision of Section 1808, Code, 1897, providing for service of notice upon the auditor of state in insurance matters comprehends the commissioner of insurance as being the one upon whom the service of notice in such matters must be served.

INSURANCE:   Fraternal Benefit Associations—Statutory Requirements—Service of Process—Nonresident Plaintiff.   Section 1808, Code, 1897, relating to the designation of agent and service of notice of process upon the auditor of state, is for the benefit of nonresident suitors as well as resident ones.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

APRIL 11, 1919.

REHEARING DENIED OCTOBER 23, 1919.

ACTION on a policy of insurance. The defendant made a special appearance to object to the jurisdiction of the court for want of appropriate notice of suit. A hearing being had upon such special plea, it was by the court overruled, and the defendant appeals.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross,* for appellant.

*Edward R. Burke* and *James O'Hara,* for appellee.

EVANS, J.—The defendant is a nonresident life insurance association. The plaintiff is one of its policy holders. He brought his action for damages for breach of the policy conditions. Service of the original notice was made upon the commissioner of insurance for the state of Iowa, under the provisions of Section 1808, Code, 1897, and Section 1683-r3, Supplement, 1913. The defendant is organized under the laws of California, and has its principal place of business in Los Angeles in such state. Its attack upon the jurisdiction of the court for want of notice is predicated upon the following grounds:

That no original notice was served upon it; that it has done no business in the state of Iowa since 1899; that it never filed with the auditor of state any written agreement that service of process upon it might be made upon the auditor of state, as provided in Section 1808; that the original notice herein was not served upon the auditor of state, but upon the commissioner of insurance; and that such a service would not be obligatory upon the defendant even if it had filed a written agreement, as provided in Section 1808; that the plaintiff is a nonresident of the state; and that the provisions of Section 1808 were intended for the benefit and protection only of residents of the state.

I.  One preliminary question calls for our first atten-

tion. Appellant complains because the trial court, in passing upon defendant's plea to the jurisdiction, took into consideration facts pleaded in the petition; whereas, it is claimed that the plea to the jurisdiction was submitted wholly upon a certain stipulation of facts. The only bill of exceptions disclosed in the record is contained in the written findings of the trial court, as follows:

"The special appearance of the defendant was submitted to the court upon a stipulation of facts which is herewith filed, and upon certain exhibits which were presented to the court and identified by the reporter, and upon the facts set forth in the affidavits attached to said special appearance, and upon the facts alleged in the petition."

The stipulation referred to by counsel did not purport to include all the facts. Moreover, the facts therein stipulated would be wholly insufficient to enable the trial court to determine therefrom the sufficiency of the plea to the jurisdiction. The burden was on the defendant to sustain its plea. In the absence of other bill of exceptions, we think the statement of the court above quoted is binding upon the parties. If it was erroneous, correction could have been obtained in the lower court by proper application. The objection here urged by the appellant, therefore, is not well taken.

1. APPEAL AND ERROR: record: bill of exceptions: effect of stipulation.

2. PLEADING: plea of jurisdiction: burden of proof.

II. Before dealing directly with the grounds urged by the defendant in defeat of the jurisdiction, another preliminary question calls for consideration. This question deals with the *identity* of the defendant. What is its entity? Is it an independent entity, unconnected with any prior organization? Or is it a mere reorganization of a prior company, without any change of entity or identity? The appellee claims the latter. The pol-

3. INSURANCE: fraternal benefit associations: identity of association: evidence.

icy in suit was issued by the Masonic Aid Association of Dakota. This association was organized under the laws of South Dakota, in March, 1886, with its principal office located at Yankton in said state. In February, 1899, by amendment, it changed its name to the Western Masons' Mutual Life Association. In July of the same year, the defendant herein was organized under the laws of the state of California, and under the name of Western Masons' Mutual Life Association. It was organized by the officers of the Dakota corporation, who became officers of both corporations. Section 9 of the articles of incorporation of the California corporation was as follows:

"Membership. All members of an association by the same name as this, organized under the laws of South Dakota, shall be members of this association. In addition thereto, all Masons in good standing who are not over fifty years of age, and can pass the required medical examination, may, if accepted, become members of this association."

In 1899, G. S. Stevenson, secretary, issued to the patrons of the association and filed with the auditor of state the following communication:

"A Rose by Any Other Name Would Smell as Sweet."

"The Masonic Aid Association of Dakota has changed its name to Western Masons' Mutual Life Association. You do not require your certificate of membership changed. The law provides that a corporation may change its name without in any manner affecting any contract. The Western Masons' Mutual Life Association is the same thing that the Masonic Aid Association of Dakota was. The officers are the same. The members are the same. The contracts the same. The change of name is part of the arrangements made to greatly expand the business of the association."

In 1902, the same officer issued and filed the following communication:

"The headquarters of the Western Masons' Mutual Life

Association has been legally moved to Los Angeles, California. The association has long been incorporated under the laws of both South Dakota and California. Some years ago, the articles of incorporation of the Dakota corporation were amended, so as to give it power to transact all its business in another state.

"Members can pay their assessments here, on the theory that they are members of the Dakota corporation and paying at the branch office, or go on the theory that they are members of the California corporation and paying at the principal office. In any event, the officers, members, certificates, and contracts of all remain the same. California is entitled to the headquarters, because it furnishes more members than any other state.

"All the records of the association are in Los Angeles. The interest-bearing assets are all in the safety deposit vaults of Los Angeles. They belong equally to all members.

"In addition to prominent California Masons, the following will remain the directors: W. G. Scott, Winnipeg, Man.; Hon. F. J. Thompson, Fargo, N. D.; W. H. Edmunds, Yankton, S. D.; Hon. D. H. Wheeler, Omaha, Nebr.; and Judge W. D. Wright, Denver, Colo.

"Hereafter direct all communications and send all remittances to Gilbert F. Stevenson, Secretary, 311 Laughlin Building, Los Angeles, California.

"Los Angeles, Cal., Sept. 1, 1902."

Both the California and Dakota corporations continued a nominal existence under the name Western Masons' Mutual Life Association until the year 1913, during which time the business of the first corporation was all done by the new corporation at Los Angeles, California. In 1913, each corporation changed its name to "Western Mutual Life Association." Without pursuing further details, we are content to follow the lead of the secretary of both asso-

ciations, and to say that the two associations represent one and the same entity.

III. The California corporation, being the defendant herein, never filed an agreement with the auditor of state, in compliance with Section 1808 of the Code. The Dakota corporation did file such an agreement, both in 1893 and in 1897. Three questions naturally arise at this point:

4. INSURANCE: fraternal benefit associations: compliance with statutory requirements: presumptions: continuation of policies and collection of premiums.

(1) Was the written agreement filed by the Dakota corporation obligatory upon the California corporation, on the theory that it represented the same entity?

(2) Was such agreement, filed by the Dakota corporation, obligatory upon the California corporation on the theory that it took over the business for the Dakota corporation and assumed all its obligations?

(3) If the California corporation did business in Iowa, and failed to comply with the requirements of Section 1808, can it set up its own wrongdoing in support of its plea to the jurisdiction?

We pass the first two questions, and take up the third. The defendant did do business in Iowa. It urges that it never solicited new business since 1899, and that the only new business obtained by it in Iowa since that date was voluntary. But it appears, also, that it has done the business of the Dakota corporation, and has collected the premiums on the policies issued by such corporation, and presumably has paid the death losses. It was its undertaking in its organization to assume the position of insurer to the policy holders of the Dakota corporation, with all the rights and liabilities attaching thereto. A nonresident insurance company does not cease to do business in another state by withdrawing its agencies and ceasing to obtain new policies if, at the same time, its old policies continue in force, and premiums thereon are collected from the policy hold-

ers.  *Connecticut Mut. Life Ins. Co. v. Spratley,* 172 U. S.
602; *Mutual R. F. Life Assn. v. Phelps,* 190 U. S. 147; *Kulberg v. Fraternal Union,* 131 Minn. 131.  This fact being
found, it was its duty to comply with the requirements of
Code Section 1808.  Its duty in this respect was a continuing one, and made daily call upon the defendant to the
time of the beginning of this suit.

Section 1808 is as follows:

"Every life insurance company and association organized under the laws of another state or country shall, before
receiving a certificate to do business in this state or any
renewal thereof, file in the office of the auditor of state an
agreement in writing that thereafter service of notice or
process of any kind may be made on the auditor of state, and
when so made shall be as valid, binding and effective for all
purposes as if served upon the company according to the
laws of this or any other state, and waiving all claim or
right of error by reason of such acknowledgment of service.
Such notice or process, with a copy thereof, may be mailed
to the auditor of state at Des Moines, Iowa, in a registered
letter addressed to him by his official title, and he shall immediately upon its receipt acknowledge service thereon on
behalf of the defendant foreign insurance company by writing thereon, giving the date thereof, and shall immediately
return such notice or process in a registered letter to the
clerk of the court in which the suit is pending, addressed to
him by his official title, and shall also forthwith mail such
copy, with a copy of his acknowledgment of service written
thereon, in a registered letter addressed to the person or
corporation who shall be named or designated by such company, in such written instrument."    (By statute made applicable to the commissioner of insurance.)

Compliance with the requirements of this section having
been obligatory upon the defendant, every day for the last
20 years, it is obligatory upon it now.  Because it was and

is obligatory, it will be conclusively presumed, as against the corporation, that it did comply with such requirements, and its rights will be determined on the theory of such compliance.   To put it in another way, the right of a policy holder to serve notice upon a nonresident insurance company doing business in this state, by service upon the auditor, arises out of the statute, rather than out of a voluntary consent on the part of the corporation.   While the statute, in terms, requires the corporation to consent, the consent itself is a condition precedent to doing business.   The statute, being in force, will operate alike upon the just and the unjust, the consenting and the nonconsenting.   The authorities upon this question appear to be unanimous.   No case holding to the contrary is brought to our attention. The question was before this court in *Sparks v. National Masonic Acc. Assn.*, 100 Iowa 458.   In that case, we said:

"It is within the power of the state to prescribe the method by which corporations doing business within it may be brought into court, and to designate the officer or agent, either of the corporation or of the state, upon whom proper process may be served.   *   *   *   We think that, when a foreign insurance company is shown to have transacted business in a state wherein, by statute, certain acts are required to be done by such company, before it has the right to transact business therein, a conclusive presumption arises that the company has complied with the requirements of the law in that respect.   Under such circumstances, the company ought not to be allowed to plead and show its own violation of law as a defense to an action brought upon the policy.   To so permit would be inviting it to take advantage of its own wrongful act, perpetrate a fraud upon those who may deal with it in good faith, and in proper reliance upon the fact that the company had conformed to the law which authorizes it to transact business."   See, also, *Old Wayne Mut. Life Assn. v. McDonough*, 204 U. S. 8.

We hold, therefore, that the defendant is in precisely the same position as it would have been if it had filed the written consent, in compliance with the statute.

IV. It is further urged by the defendant that Section 1808 permits no other form of service of the notice than an acceptance of service by the public officer. In this case there was no acceptance. In lieu thereof, the

**5. INSURANCE: fraternal benefit associations: process upon nonresident association.** sheriff served the notice upon the public officer in the usual method. We think this contention of appellant's is based upon a wrong construction of the statute. It expressly requires the company to file with the auditor of state "an agreement in writing that thereafter service of notice or process of any kind may be made on the auditor of state, and when so made shall be as valid, binding and effective for all purposes as if served upon the company according to the laws of this or any other state." This section further provides for an acceptance of service by the auditor of state. This provision does not negative service of notice without acceptance. It is only an additional provision, intended for the convenience of the plaintiff in the suit. It enables him to obtain service by letter, without incurring the expense of official mileage and formal service.

V. It is further urged that the service in this case was not upon the auditor of state, but upon the commissioner of insurance. The argument is that, even though the Dakota corporation did comply with Section 1808,

**6. INSURANCE: fraternal benefit associations: statutory requirements: commissioner of insurance.** and even though the agreement filed by it were obligatory upon the California corporation, yet this went no further than to bind the California corporation by such service of notice as should be made upon the auditor of state.

By the Acts of the Thirty-fifth General Assembly, the insurance department was separated from the office of audi-

tor of state, and placed in charge of the commissioner of insurance. Section 1683-r3 provides:

"The commissioner of insurance shall be the head of the insurance department of Iowa  *  *  *; and all powers now vested in and all duties imposed upon the auditor of this state relating in any way to insurance matters, shall, from and after the taking effect of this act, be vested in and made incumbent upon the commissioner of insurance herein provided for."

We deem it clear that the provisions of Section 1808 conferred "powers now vested in and duties imposed upon the auditor of state." Such powers and duties were by the later legislation transferred to the commissioner of insurance. They were so transferred, not by the consent of the persons affected, but by the power of the law. Section 1808 and the later legislation must be read together. Reading them together, they indicate clearly that the powers vested in and duties imposed upon the auditor of state by Section 1808 became vested in and incumbent upon the commissioner of insurance, under the amending provisions of Section 1683-r3. Since the enactment of the later statute, the call of Section 1808, as thereby necessarily amended, has been that the defendant should file with the commissioner of insurance its written agreement that service might be made upon such commissioner of insurance, as the head of the insurance department of the state. It matters not, therefore, whether we charge the defendant with the obligations of the written agreement filed by its predecessor, or whether we hold it to its own original and continuing duty to file in its own behalf a like agreement, first with the auditor of state, and later with the commissioner of insurance. In either case, it is presumed to have complied with all the law of this state relating to such matter.

VI. Lastly, it is urged that Section 1808 was intended solely for the benefit of residents of the state, and not for

the benefit of nonresidents; and that the plaintiff is a resident of Omaha. It is perhaps sufficient answer to this contention to say that the plaintiff was a resident of Iowa when he took his policy and became a member of the defendant association. This, of itself, ought to be enough to entitle him to the continuing protection of the Iowa statutes in the enforcement of an Iowa contract. Furthermore, while it may be true that the protection of residents of this state was the prominent motive of the legislature in the enactment of the statute in question, it still remains that the courts, in dealing with litigants, know "neither Jew nor Gentile," neither resident nor nonresident. The statute, by its terms, and doubtless by constitutional requirement, is general and universal, and makes no exception as against a nonresident. We reach the conclusion that the defendant's plea to the jurisdiction was properly overruled. The order to that effect is—*Affirmed.*

**7. INSURANCE:** fraternal benefit associations: statutory requirements: service of process: nonresident plaintiff.

LADD, C. J., PRESTON and SALINGER, JJ., concur.