# MOORE v. CONSOLIDATED PRODUCTS CO.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1925. Rehearing Denied February 10, 1926.)

No. 7010.

Evidence ⚖➙418—Admission of parol evidence that president of corporation signed simple contract as agent of corporation held not violative of parol evidence rule.

Admission of parol evidence that simple written contract was signed by president of corporation as agent of corporation not mentioned therein did not violate parol evidence rule, regardless of whether other party to contract knew corporation was principal; question being one of fact.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by John F. Moore against the Consolidated Products Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Chester I. Long, of Wichita, Kan. (J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, and W. E. Stanley, all of Wichita, Kan., on the brief), for plaintiff in error.

Harry J. Lurie, of Chicago, Ill., and R. R. Vermilion, of Wichita, Kan. (Earle W. Evans, Joseph G. Carey, and W. F. Lilleston, all of Wichita, Kan., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. John F. Moore (hereinafter called plaintiff) brought this action against the Consolidated Products Company (hereinafter called defendant) to recover for services alleged to have been rendered by plaintiff to defendant. The petition set up two alleged causes of action. In the first cause of action, plaintiff alleged that the defendant during the years 1918 to 1921, inclusive, was engaged in the manufacture of buttermilk products, using a process covered by a patent owned by the Grelck-Hovey Patent Company (hereinafter called Patent Company); that the Patent Company had instituted a suit in the United States District Court for the Northern District of Illinois against the defendant for an infringement of its patent and for an accounting of moneys due on a royalty basis; that the defendant entered into an oral contract with the plaintiff whereby it employed the plaintiff to undertake to arrange a compromise of the patent suit upon the basis that the defendant should pay the Patent Company, for the products theretofore manufactured by the defendant and thereafter to be manufactured by the defendant during the life of the patent, a royalty of not to exceed one-eighth of one cent per pound of products manufactured; that in said oral contract it was agreed that, if the plaintiff effected such a compromise, the defendant would pay the plaintiff as compensation therefor one-half of all sums which might be saved to the defendant, and one-half of all other benefits which the defendant might receive by reason of such settlement, and in addition thereto, in the event such settlement was on a royalty basis of less than one-eighth of one cent per pound, one-half of the difference between the amount of the royalties computed on the basis of one-eighth of one cent per pound and the basis of settlement; that thereupon plaintiff undertook to effect such settlement, and arranged a meeting between William P. M. Grelck, president of the Patent Company, and A. P. Hunt, president of the defendant company, at the city of Chicago; that—

"When the plaintiff had thus brought together the managing officers of the corporations who were parties to said suit and said controversies, and while they were negotiating toward a closing up of the settlement, said A. P. Hunt, as president of the Consolidated Products Company, came to the plaintiff and stated in substance that said Grelck objected to making any settlement or adjustment of the suit or the controversies incident thereto between the Consolidated Products Company and the Grelck-Hovey Patent Company, if the plaintiff was to have or claim any interest in the subject-matter of the controversy, as had theretofore been agreed by the parties to such negotiations, and that if the plaintiff would withdraw any claim or claims he might have for any interest in the said patents or rights thereunder, and step out of the negotiations, and let said Hunt and said Grelck close the negotiations for their respective companies as they might see fit, then the Consolidated Products Company would pay to the plaintiff, for the services which he had rendered and for his withdrawal as aforesaid, one-half of all interests, rights, proceeds, and profits accruing to the Consolidated Products Company as a result of any settlement or arrangement which might be made with the Grelck-Hovey Patent Company. The plaintiff accepted said last-mentioned proposal,

and as evidence of said promise and agreement on behalf of the said Consolidated Products Company the said A. P. Hunt, acting as president of said company and on its behalf, executed and delivered to the plaintiff a memorandum in writing, which reads as follows:

" 'In consideration of the services rendered by John F. Moore, of Kansas City, and the withdrawal of said Moore for any interest in matters in connection with the patents and other interests in connection with Wm. Grelck, and in consideration of the sum of $5 to me paid by said Moore, I hereby agree that, in the event an arrangement is made with said Grelck concerning royalties and other interests connected with the patents held by Grelck-Hovey Patent Company, I will convey to said Moore for the above considerations one-half of the interest I may acquire in connection with said Grelck, and to pay to said Moore one-half of the proceeds and profits arising therefrom, and upon the incorporation of a company I will convey to said Moore one-half of my stock or other interest in said company. Witness my hand in the city of Chicago this 21st day of May, 1921. Moore to pay one-half of the expenses incurred by me incidental to incorporation, and other charges in contesting infringements of patents. Moore is to have all my share of profits for the first year of said business arising from the sales end of the business.

         " '[Signed]    A. P. Hunt.

" 'Witness:   W. O. Thomas,' ".

—and that there was due plaintiff from defendant on account of the services rendered the sum of $550,000.

In the second cause of action, plaintiff alleged that he rendered services to the defendant in bringing about the compromise and settlement between the defendant and Patent Company, and prayed for recovery therefor upon quantum meruit.

To the first cause of action the defendant interposed a demurrer, and to the second cause of action a motion to strike. The trial court sustained the demurrer and the motion, and dismissed the petition. From the judgment of dismissal, this writ of error was sued out.

In passing upon the demurrer and motion, the court held that the plaintiff, by the written agreement purporting to have been entered into between him and Hunt, released his right to recover under the oral agreement theretofore entered into with the defendant company, and that the plaintiff could not show by oral evidence that Hunt entered into the written agreement for and in behalf of the defendant as its agent, because to do so would violate the rule that parol evidence is not admissible to vary or contradict a written instrument.

Counsel for defendant state their contentions as follows:

"First. When parol agreements or understandings have been merged in a subsequent written contract, the latter is binding, and from its terms alone may the court determine the liability of the parties thereto.

"Second. When one executes an instrument in writing, on its face clear and unambiguous, and in which his name alone appears, he alone is liable."

The rule that a written contract merges all prior and contemporaneous negotiations and verbal agreements on the subject is in effect a statement in a different form of the rule excluding extrinsic evidence to contradict or modify a written contract. 13 C. J. p. 597, § 616; 10 R. C. L. p. 1016, § 208.

The written agreement was a simple contract, and not one under seal. To permit the plaintiff to show that Hunt entered into the written contract in behalf of the defendant company, as its agent, would not violate the rule that a written instrument may not be varied or contradicted by parol evidence. Ford v. Williams, 21 How. (62 U. S.) 287, 16 L. Ed. 36; The Salmon Falls Mfg. Co. v. Goddard, 14 How. (55 U. S.) 446, 454, 14 L. Ed. 493.

In the case of Ford v. Williams, supra, the court said:

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction. But the agent, who binds himself, will not be allowed to contradict the writing by proving that he was contracting only as agent, while the same evidence will be admitted to charge the principal. 'Such evidence (says Baron Parke) does not deny that the contract binds those whom on its face it purports to bind, but shows that it also binds another, by reason that the act of the agent is the act of the principal.' See Higgins v. Senior, 9 Meeson & Wilsby, 843.

"The array of cases and treatises cited by the plaintiff's counsel shows conclusively that

this question is settled, not only by the courts of England and many of the states, but by this court. See New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 381 [12 L. Ed. 465], et cas. ib. cit."

Counsel for defendant contend, however, that the above rule applies only in the case of an undisclosed principal, and cannot be invoked against or in behalf of a principal known to the other party to the contract at the time the contract was made. They say that where a person, with knowledge of the agency, enters into a contract with the agent in the agent's name, his election to deal with the agent as an individual conclusively appears.

The question, after all, is one of fact. Was the contract made for and in behalf of the principal? If it was, the act of the agent was the act of the principal, and the principal may sue or be sued thereon. The great weight of modern authority applies the rule, both where the principal is known and where the principal is undisclosed, to the other party to the contract. New York & C. S. S. Co. v. Harbison (C. C.) 16 F. 688, 692; Exchange Bank v. Hubbard et al. (C. C. A. 2) 62 F. 112, 10 C. C. A. 295; Byington et al. v. Simpson, 134 Mass. 169, 45 Am. Rep. 314; Powell v. Wade, 109 Ala. 95, 19 So. 500, 55 Am. St. Rep. 915; Wiener v. Whipple, 53 Wis. 298, 10 N. W. 433, 40 Am. Rep. 775; Flower v. Commercial Trust Co. (C. C. A. 8) 223 F. 318, 138 C. C. A. 580; Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 Am. St. Rep. 451; Calder v. Dobell, L. R. 6, C. P. 486; Higgins v. Senior, 8 Mees. & W. 834; 21 R. C. L. p. 893, § 66; Story on Agency (Bennett's Ed.) § 160a.

In Byington v. Simpson, supra, Mr. Chief Justice Holmes (then judge of the Supreme Judicial Court of Massachusetts) said:

"The argument is that, inasmuch as the plaintiffs knew of the existence of a principal before the contract was made, and then were contented to accept a written agreement which on its face bound the agent, they must be taken to have dealt with, and to have given credit to, the agent alone, just as, upon a subsequent discovery of the undisclosed principal, they might have determined their right to charge him by a sufficient election to rely upon the credit of the agent.

"We are of opinion that the plaintiff's knowledge does not make their case any weaker than it would have been without it. Whatever the original merits of the rule, that a party not mentioned in a simple contract in writing may be charged as a principal upon oral evidence, even where the writing gives

10 F.(2d)—21

no indication of an intent to bind any other person than the signer, we cannot reopen it, for it is as well settled as any part of the law of agency. Huntington v. Knox, 7 Cush. [Mass.] 371, 374; Eastern Railroad v. Benedict, 5 Gray [Mass.] 561 [66 Am. Dec. 384]; Lerned v. Johns, 9 Allen [Mass.] 419; Hunter v. Giddings, 97 Mass. 41 [93 Am. Dec. 54]; Exchange Bank v. Rice, 107 Mass. 37, 41, 9 Am. Rep. 1; National Ins. Co. v. Allen, 116 Mass. 398; Higgins v. Senior, 8 M. & W. 834, 844. And it is evident that words which are sufficient on their face, by established law, to bind a principal, if one exists, cannot be deprived of their force by the circumstance that the other party relied upon their sufficiency for that purpose. Yet that is what the defendant's argument comes to. For the same parol evidence that shows the plaintiff's knowledge of the agency may warrant the inference that the plaintiffs meant to have the benefit of it and to bind the principal.

"The only reasons which have been offered for the admissibility of oral evidence to charge the alleged principal confirm this conclusion. That suggested in Higgins v. Senior, ubi supra, is the same which is usually given for the liability of a master for his servant's torts, that the act of the agent is the act of the principal (see 1 Bl. Com. 432; Laugher v. Pointer, 5 B. & C. 547, 553; Williams v. Jones, 3 H. & C. 602, 609), the meaning of which, in its latter application, at least, is, as was stated long ago, that master and servant are 'fained to be all one person.' West's Symboleography, part I, section 3, 'of the fact of man.' The most plausible explanation which has been attempted pursues the same thought more clearly. It is said that the principal is liable 'because he is taken to have adopted the name of the [agent] as his own, for the purpose of [the] contract.' 2 Smith Lead. Cas. (8th Ed.) 408, note to Thomson v. Davenport; Trueman v. Loder, 11 Ad. & El. 589, 595; s. c., 3 P. & Dav. 267, 271. If this is to be accepted, there is obviously the strongest ground for saying that the principal has adopted the agent's name for the purposes of a given contract, when it is shown that both parties have acted on that footing.

"The most that could fairly be argued in any case would be that, under some circumstances, proof that the other party knew of the agency, and yet accepted a writing which did not refer to it, and which in its natural sense bound the agent alone, might tend to show that the contract was not made with any one but the party whose name was sign-

ed; that the agent did not sign as agent, and was not understood to do so, but was himself the principal. But these are questions of fact."

In Bank v. Hubbard, supra, the court said:

"In order to charge the real principal, it is always competent, in whatever form a parol or written contract is executed by an agent, to ascertain by evidence dehors the instrument who is the principal, whether it purports to be the contract of an agent, or is made in the name of the agent as principal; and the real principal may be held, although the other party knew that the person who executed as principal was in fact the agent of another."

It follows that the court erred in sustaining the demurrer to the first cause of action and the motion to strike the second cause of action. The cause is therefore reversed and remanded.