## DARLING STORES CORPORATION v. YOUNG REALTY CO.

### No. 11883.

Circuit Court of Appeals, Eighth Circuit.

June 24, 1941.

George Cosson and George Cosson, Jr., both of Des Moines, Iowa (Eugene Frederick Roth, of New York City, on the brief), for appellant.

Robert J. Bannister, of Des Moines, Iowa (John E. Perry and Stipp, Perry, Bannister & Starzinger, all of Des Moines, Iowa, on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The somewhat complex and confusing status of affairs in this controversy are

thus best stated in the findings of the trial court:

"1. Young Realty Company is an Iowa corporation, and at all times significant herein was and still is owner of Lots 7 and 8, in Block 2, in the Original Town of Fort Des Moines, now included in and forming a part of the City of Des Moines, Iowa, on which premises was located a store building which included the premises known as 710 Walnut Street, in Des Moines, Iowa.

"2. Darling Shops was a partnership organized on May 9, 1934, by George A. Gluck and Max H. Gluck for the operation of a ladies' ready-to-wear retail merchandising business. It continued to operate as such until April 30, 1936, at which time it included a chain of fifty or more stores throughout the United States. Effective as of April 30, 1936, it was converted into a corporation known as Darling Stores Corporation. During the period of transition from May 1, 1936, to June 24, 1936, George A. Gluck and Max H. Gluck operated the business as interim trustees for the benefit of Darling Stores Corporation in process of formation. The principal place of business of Darling Shops, the partnership, was at 370 Seventh Avenue, New York City.

"3. Darling Shops, Inc., of Delaware, was incorporated in the State of Delaware on June 20, 1935. Its offices were at 370 Seventh Avenue, New York City. It and eight other subsidiaries of the partnership Darling Shops were created and existed solely for the purpose of leasing store locations throughout the United States, which they in turn subleased to the partnership at the same rental, and, after June 24, 1936, to Darling Stores Corporation. Darling Shops, Inc., of Delaware had no assets and no income of any kind, except that it received from subleasing transactions from Darling Stores Corporation and which it immediately transmitted to its lessors. It made no profit from subleasing transactions and existed only to serve Darling Shops, and, after its creation, Darling Stores Corporation.

"4. Darling Stores Corporation was incorporated in the State of New Jersey on June 24, 1936, and its principal offices were located at 370 Seventh Avenue, New York City. On June 24, 1936, a contract was entered into between Darling Stores Corporation and Darling Shops, the partnership, whereby the latter transferred, sold and assigned all its assets, business, stock of goods, trade, goodwill, and all shares of stock in subsidiary corporations, including all the capital stock of Darling Shops, Inc., to Darling Stores Corporation. In return Darling Stores Corporation issued a large quantity of its capital stock to George A. Gluck and Max H. Gluck, the partners in Darling Shops, and expressly assumed all the obligations and liabilities of the partnership, including all created during the interim trusteeship, after April 30, 1936, and prior to June 24, 1936.

"5. On June 14, 1935, Young Realty Company leased the premises known as 710 Walnut Street to Adeline Chain Stores, Inc., from June 1, 1935, to June 30, 1940, at a rental of $600.00 a month.

"6. In the month of May, 1936, Adeline Chain Stores, Inc., sought to assign its lease with Young Realty Company to Darling Shops, Inc., of Delaware, and to secure the assent of Young Realty Company to the assignment. Adeline Chain Stores, Inc., assured Young Realty Company that the proposed assignee of the lease, Darling Shops, Inc., of Delaware, was a solvent substantial merchandising corporation, operating many stores throughout the United States, and Young Realty Company obtained a Dun and Bradstreet report showing that Darling Shops, Inc., was a solvent financially able corporation. In assenting to the assignment and assumption of the lease by Darling Shops, Inc., Young Realty Company believed in the truth of the information so furnished it, and by reason of the manner in which business was conducted at the Darling Shops store at 710 Walnut Street in Des Moines, Iowa, from July 1, 1936, until the breach of the lease in April, 1938, Young Realty Company and its officers and agents had no knowledge of the real corporate setup of the various Darling corporations until a considerable time after breach of the lease in April, 1938.

"7. On June 1, 1936, on assurance of Young Realty Company that its assignment of the lease to Darling Shops, Inc., of Delaware, would be consented to, Adeline Chain Stores, Inc., executed its assignment. On June 2, 1936, Darling Shops, Inc., assumed the obligations of the lease and agreed to perform them. The lease, by its terms, expressly forbade any assignment without the consent of the landlord, Young Realty Company. On June 5, 1936, Young Realty Company consented to the

assignment and the assumption by Darling Shops, Inc.

"8. In the month of June, 1936, a bank account was opened in the name of 'Darling Shops' in Bankers Trust Company, in Des Moines, Iowa. The storeroom at 710 Walnut Street, Des Moines, Iowa, was occupied, a stock of goods placed therein belonging to Darling Stores Corporation, and the store was given the name 'Darling Shops'. As at the first of July, 1936, the store commenced operation as a ladies' ready-to-wear retail merchandising business.

"9. During the operation of 'Darling Shops' store at 710 Walnut Street, in Des Moines, Iowa, all the goods which were sold were furnished by and owned by Darling Stores Corporation, and all the receipts, except those needed to pay salaries of the manager and clerks, utilities services and similar items, were deposited in the 'Darling Shops' account in Bankers Trust Company and were withdrawn by Darling Stores Corporation in New York City. Rent due under the lease was paid by checks sent out from the main offices of the 'Darling' organizations at 370 Seventh Avenue, New York City. All the business done at the store was done under the name 'Darling Shops.' All correspondence between the manager and the head offices of the 'Darling' organization was conducted under the name of 'Darling Shops'. All goods were ordered through and sent through the main offices of the 'Darling' organization at 370 Seventh Avenue, New York City.

"10. Darling Shops, Inc., at all times material herein, had the same offices as Darling Shops, the partnership, and after its organization, Darling Stores Corporation; the officers of Darling Shops, Inc., were all officers of Darling Stores Corporation, and all the capital stock of Darling Shops, Inc., was owned by Darling Stores Corporation. Darling Shops, Inc., had no assets and no income, except from funds paid to it on subleasing transactions by Darling Stores Corporation, which funds it immediately paid over to its lessors entirely.

"11. On April 10, 1938, the 'Darling Shops' store at 710 Walnut Street, in Des Moines, Iowa, was abandoned, the stock of goods therein removed in the night, and the April rent then due and delinquent was left unpaid and no rent was paid thereafter".

These findings of fact are not substantially challenged in argument or brief. We find in the record explicit admissions by appellant of their more important and decisive features. Thus, in a prospectus issued to induce the public to purchase its stock, Darling Stores Corporation said of its subsidiaries as follows:

"These subsidiaries lease store locations for various periods of time, either at a stated rate of monthly rental or at a stipulated percentage of sales. They, in turn, sublease these locations to the parent organization at the same rate and basis of rent as provided for in the original lease. The subsidiaries exist only to serve the parent company and do not profit through subleasing transactions. In certain instances leases were negotiated directly with the landlord by the predecessor partnership; the partners have subleased these locations to the Corporation at the rental provided in the original leases".

And it further advised the Securities and Exchange Commission that it was the operator of the fifty or more Darling Shops throughout the country, including the Des Moines store, and the owner of the merchandise, goods, furniture and fixtures, trade names and leaseholds of the "Darling Shops" business. In one of the exhibits, relating to matters before the Securities and Exchange Commission, it is stated that the business originated as a partnership up to April 30, 1936; and that, during the period of transition from May 1, to June 30, 1936, George A. Gluck and Max H. Gluck operated the business as interim trustees for the benefit of the corporation in process of formation.

May 31, 1939, appellee brought suit in equity in the District Court of Iowa in and for Polk County, against Darling Shops, Inc., and Darling Stores Corporation, charging that Darling Shops, Inc., was the mere adjunct agent and instrumentality of Darling Stores Corporation, that the latter wholly dominated, directed, and controlled the former and is directly liable to appellee on the lease. Plaintiff-appellee prayed that the said lease should be so reformed as to make Darling Stores Company, as the real party in interest, directly liable on the assumption agreement made by Darling Shops, Inc.; and that appellee have judgment against both defendants for damages suffered by the breach of said lease. The case was subsequently removed to the United States District Court for the South-

ern District of Iowa. That court, being of opinion that the record conclusively established Darling Stores Corporation as the real party in interest, and, therefore, that the reformation prayed for was unnecessary, entered judgment directly against that defendant accordingly. The substance of appellant's contention on this appeal may be summarized in the following quotation from its brief:

"Under this record as it affirmatively appears, no valid service of process has ever been made upon this defendant-appellant corporation, and therefore, the entry of any judgment upon the defendant-appellant corporation and the enforcement thereof is a denial of due process under the 14th Amendment."

Chapter 386 of the Code of Iowa, in effect during and long prior to the happenings here under consideration, contains the following provisions:

"8420 Any corporation for pecuniary profit organized under the laws of another state, or of any territory of the United States, or of any foreign country, which has transacted business in the state of Iowa since September 1, 1886, or desires hereafter to transact business in this state, and which has not a permit to do such business, shall file with the secretary of state a certified copy of its articles of incorporation, duly attested [by its state officers, etc.] accompanied by a resolution of its board of directors or stockholders authorizing the filing thereof, and also authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, and requesting the issuance to such corporation of a permit to transact business in this state; said application to contain a stipulation that such permit shall be subject to the provisions of this chapter."

Section 8421, paragraph 6, provides that said application shall contain a certified copy of the resolution of the board of directors of said corporation, giving name and address in Iowa of a resident agent on whom the service of original notice of civil suit in the courts of this (Iowa) state may be made. Failing which, or in the event such agent may not be found within the state, service of such process may then be made upon said corporation through the Secretary of State, which service shall have the same force and effect as if lawfully made upon said corporation within the county where such civil suit could be maintained against it under the laws of this (Iowa) state.

In recognition of these provisions, Darling Shops, Inc., had applied for and received the permit in question, and had named George Cosson, attorney of record herein, as its statutory agent upon whom service of process could be made. Darling Shops, Inc., had withdrawn from the state prior to the institution of this action. Appellee made service of process upon said Cosson; but, out of precaution in view of the conditions then existing, made service also upon the Attorney General. The validity of the latter was expressly recognized in the findings and conclusions of the district court.

■ The findings of the trial court, abundantly supported by the evidence, identify the partnership and its corporation successor as constituting the same business entity. Darling Shops, Inc., existed only to serve the parent organizations—the partnership first, and Darling Stores Corporation subsequently. From May 1, 1936, to June 30, 1936, while Darling Stores Corporation was in process of formation, the business was operated for its benefit by the Glucks as interim trustees, and thereafter by the consummated corporate entity as the real party in interest, doing business in Des Moines, Iowa under the title "Darling Shops". In such case it is well settled law, as stated by this court in Chicago Mill & Lumber Co. v. Boatmen's Bank, 8 Cir., 234 F. 41, 45, that "when one corporation owns or controls the entire property of another, and operates its plant and conducts its business as a department of its own business, or as its alter ego, it is responsible for its obligations incurred in so doing". Bishop v. United States, 8 Cir., 16 F.2d 410, 415. And in Wabash Railway Co. v. American Refrigerator Transit Company, 8 Cir., 7 F.2d 335, 343, we said:

"If corporations carry on part of their business through subsidiary companies, it makes little difference what such companies may be called; there is no particular divinity surrounding the term 'corporation.' The courts will look through the form to get at the real intent of the association of individuals or corporations forming the organization, and, if rights of third parties have not intervened, will give effect to the real purpose of the organization in order to promote square dealing and effectuate justice".

■ And courts will ignore the fiction of corporate legal entity when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud. Commerce Trust Co. v. Woodbury, 8 Cir., 77 F.2d 478, 487. In such cases "the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require". United States v. Reading Co., 253 U.S. 26, 63, 40 S.Ct. 425, 434, 64 L.Ed. 760, and cases cited. This court has consistently held that

"The question, after all, is one of fact. Was the contract made for and in behalf of the principal? If it was, the act of the agent was the act of the principal, and the principal may sue or be sued thereon. The great weight of modern authority applies the rule, both where the principal is known and where the principal is undisclosed, to the other party to the contract". Moore v. Consolidated Products Co., 8 Cir., 10 F.2d 319, 321.

See, also, Exchange Bank v. Hubbard, 2 Cir., 62 F. 112, 116; Des Moines Terminal Co. v. Des Moines Union Ry. Co., 8 Cir., 52 F.2d 616; Certain-teed Products Corporation v. Wallinger, 4 Cir., 89 F.2d 427; Flinn v. Western Mut. Life Ass'n, 187 Iowa 507, 171 N.W. 711, and Wade & Wade v. Central Broadcasting Co., 227 Iowa 427, 288 N.W. 441.

■ It is held that a nonresident corporation which enters into an arrangement with another corporation to operate in its name and under its formulae is doing business in the state so as to justify service of process upon its agent, pursuant to statute relating thereto, in a suit against a nonresident corporation.

■ "Liability of parent corporation for improper acts of subsidiary which has directors and officers subordinate to parent corporation extends to all torts". Certain-teed Products Corporation v. Wallinger, 4 Cir., 89 F.2d 427, 428.

■ It next becomes important to consider the construction placed by the Iowa courts upon statutes authorizing doing business within that state. It is there uniformly held that the corporate entity of a corporation may be disregarded where it is organized and controlled, and its affairs are so conducted as to make it merely an instrumentality, agency, conduit or adjunct of another corporation. Wade & Wade v. Central Broadcasting Co., 227 Iowa 427, 288 N.W. 441; Flinn v. Western Mutual Life Association, 187 Iowa 507, 171 N.W. 711; American Asphalt Roof Corporation v. Shankland, 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986; Walter M. Toole Co. v. Distributors' Group, Inc., 217 Iowa 414, 251 N.W. 689. Perhaps the clearest and most exhaustive statement of the Supreme Court of Iowa with respect to the policy of the State of Iowa in relationship to such statutes is found in Sparks v. National Masonic Acc. Ass'n, 100 Iowa 458, 69 N. W. 678, 682, construing a Missouri statute similar in its provisions to the Iowa statute upon the same subject-matter. It is there held a foreign company which is shown to have transacted business in the state cannot question the validity of the service of process upon it on the ground that it has not complied with the law, such compliance being conclusively presumed from the fact of doing business in the state. With respect to this phase of the question the Supreme Court of Iowa said:

"There can be no valid reason why this company, which voluntarily entered the state of Missouri, and solicited and obtained business there, in defiance of the laws of that state, should be permitted to shield itself from liability in this action behind the very illegal act by means of which it was enabled to obtain the money of the deceased. To so hold would be equivalent to offering a premium for the continuance of such illegal practices".

■ In the case before us the fact of doing business in the state, and the necessity of compliance with the Iowa statute, was admitted by the application of Darling Shops, Inc., for, and its receipt and acceptance of, the permit granted. It could not absolve itself of the obligation assumed by withdrawal from the state after its breach of that obligation. But it has been conclusively proved, and correctly found, that in the conduct of this business, the original partnership, Darling Shops, Inc., and Darling Stores Corporation are identical. From the date of its process of organization the latter corporation has been doing business in Iowa; and, at least from the date of its formal incorporation, it has been under the duty of complying with the provisions of the Iowa statute. Such compliance will be conclusively presumed to justify the service of process made. In this view, the fact of its techni-

cal incorporation at the time the lease was taken over by Darling Shops, Inc., is unimportant, as are the other technical objections to the responsibility of this appellant on the merits. That responsibility arises primarily from doing business in the State of Iowa in default of compliance with statutory duty; and the damage to appellee results from the breach of implied contractual obligations. We are concerned, therefore, only with the validity of the service of process conferring jurisdiction, and we ·concur with the finding and conclusion of the trial court. In reaching this conclusion it is unnecessary to find that the fiction of corporate entity was here employed to perpetrate a fraud. It certainly does have the tendency "to interfere with the public convenience". In Moore v. Consolidated Products Co., 8 Cir., 10 F. 2d 319, 322, this court quoted approvingly from Exchange Bank v. Hubbard, supra [62 F. 116], as follows:

"In order to charge the real principal, it is always competent, in whatever form a parol or written contract is executed by an agent, to ascertain by evidence dehors the instrument who is the principal, whether it purports to be the contract of an agent, or is made in the name of the agent as principal; and the real principal may be held, although the other party knew that the person who executed as principal was in fact the agent of another."

We therefore give effect to the real purpose of appellant's organization in order "to promote square dealing and effectuate justice". Wabash Ry. Co. v. American Refrigerator Transit Co., 8 Cir., 7 F.2d 335, 344. Appellant places some reliance upon Fairbanks, Morse & Company v. District Court, 215 Iowa 703, 247 N.W. 203, because in that case it was stated that at the time of contract the agency relationship must exist between parent and subsidiary if the parent is to be held liable. As we have shown, however, the agency here did in fact exist, merely carrying forward the relationship with an undisclosed principal. The Fairbanks, Morse & Company case, when applied to the facts here found, is in fact authority for sustaining this judgment.

The decision of this court in Darling Shops, Inc. v. Brack, 8 Cir., 95 F.2d 135, has no bearing upon the case now before us. There the judgment was reversed for errors in the trial of the issue raised by a change in the lease, of which the lessor was shown to have been fully cognizant. No question as to good faith in the Darling Shops organization was raised. We have carefully considered all points relied upon by appellant in brief and argument, and find no error justifying reversal. The judgment accordingly is affirmed.